EMILY F. DINGLEY, Respondent, *v.* ISADORE M. BON, Appellant.

An unrecorded conveyance of real estate is not void as against a subsequent purchaser, although for a valuable consideration, who had notice at the time of his purchase of the unrecorded deed ; he cannot claim the benefit of the Recording Act.

A purchaser of real estate is entitled to a marketable title free from reasonable doubt.

Specific performance of his contract will not be decreed where the title depends upon a disputed question of fact, outside of the record, about which there is reasonable doubt, and when the parties interested therein are not before the court.

In an action to compel the specific performance of a contract for the purchase of land, the following facts appeared: The premises were conveyed in 1854 by J. & G. to H., by deeds which recited that the grantors had

conveyed portions thereof to L., S. & B. and taken back from them mortgages thereon and that the grantors intended to convey their interests in the premises and in said mortgages. Plaintiff took title under said deeds. No deed to L., S. or B. appeared on record. Plaintiff claimed that the recitals in said deeds only amounted to constructive notice, casting upon the purchaser the duty of ascertaining from the records as to the conveyances referred to, and as the records disclosed nothing, the purchaser took an absolute title in fee. *Held*, untenable; and that plaintiff's title was not free from reasonable doubt.

It appeared that K., plaintiff's grantor, contracted to purchase the premises, but refused to perform his contract because of the recitals in the deeds to H. Thereupon an action to compel specific performance was brought against K. which resulted in a judgment for specific performance; K.'s objections being overruled upon the ground that it appeared the recitals in the deeds were not true in fact, that no deeds were ever given to L., S. or B. but simply executory contracts, which were subsequently canceled and surrendered. K. thereupon took title. *Held*, that as neither L., S. nor B. were made parties to said action, they were not bound by the judgment, and it was not binding upon defendant.

*Sanders* v. *Townshend* (89 N. Y. 623); *Dow* v. *Whitney* (147 Mass. 1), distinguished.

(Argued January 20, 1892; decided February 9, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 10, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herman F. Koepke* for appellant. The finding of facts "that the defendant is unable to ascertain whether any or what part of the land described in the complaint has been conveyed to" Langston et al., is conclusive against the respondent on this appeal to show that if the defendant was chargeable with notice of the outstanding deeds he was unable to find out anything about them and consequently could safely complete the purchase for the reason that he would take the title freed from the effects of notice. (Whart. Leg. Max. 89.) The recital operated at most as notice of certain outstanding conveyances.

(*Nellis* v. *Munson,* 108 N. Y. 461; *Sanders* v. *Townshend,* 89 id. 623.) The absence of a hostile record or possession after a lapse of time freed the title from the effects of the notice. (*Birdsall* v. *Russell,* 29 N. Y. 250; *Page* v. *Waring,* 76 id. 471; Willard on Real Estate [2d ed.], 121; *Acer* v. *Westcott,* 46 N. Y. 392; *Rogers* v. *Jones,* 8 N. H. 264.) The plaintiff is protected in her title by the Recording Acts. (1 R. S. 756; *Wood* v. *Chapin,* 13 N. Y. 509; *Hayes* v. *Nourse,* 114 id. 606.) The title is such a one as a court of equity should compel a purchaser to take. (*Ferry* v. *Sampson,* 112 N. Y. 415; *W. P. I. Co.* v. *Reymert,* 45 id. 703; *Nellis* v. *Munson,* 108 id. 461; *Chamberlain* v. *Sparger,* 86 id. 606; *Daw* v. *Whitney,* 147 Mass. 1; *Moser* v. *Cochrane,* 107 N. Y. 41.)

*Johnson & Lamb* for respondent. Where, from a description in a deed, the amount of land sought to be conveyed cannot be ascertained, no title passes. (*Raynor* v. *Timerson,* 46 Barb. 518; *Hathway* v. *Power,* 6 Hill, 453; *Jackson* v. *Clark,* 7 Johns. 217; *Finley* v. *Cook,* 54 Barb. 9; *Jackson* v. *Marsh,* 6 Cow. 281; *Jackson* v. *Roosevelt,* 12 Johns. 97; *Jackson* v. *Delancey,* 13 id. 537; *Jackson* v. *Ransom,* 18 id. 107.) Conceding that possession sometimes cures defects in the title, nowhere has it ever been been held that a vendee can be compelled to take and pay, as for a merchantable title, where there is neither a title of record nor a title by prescription. (*Schriver* v. *Schriver,* 86 id. 575; *Post* v. *Bernheim,* 31 Hun, 247.) The evidence in the Harrison record is obviously collusive, and the whole suit an obvious sham, and a silly attempt to make a record against parties who were not present, who were not cited, and who did not have their day in court. (*Schriver* v. *Schriver,* 86 N. Y. 584.) Under the contract made between the parties to this action, the defendant can insist on a marketable title, one not open to reasonable objections. If there is a reasonable doubt about this title, specific performance should not be compelled. (*M. E. C. Home* v. *Thompson,* 108 N. Y. 618; *Ferry* v. *Sampson,* 112 id. 415; *Toole* v. *Toole,* Id. 333; *Abbott* v. *James,* 111 id. 673.)

HAIGHT, J.   This action was brought to compel the specific performance of a contract to purchase land.   ·

The defense was that the title was not merchantable.

Peter A. Delmonico was the owner of a tract of land in the city of Brooklyn, comprising the land in question.   On the 11th day of March, 1854, he conveyed the same to Henry Jukes and Job Gothard.   On the twenty-sixth of September thereafter they conveyed the same to James Hordern by separate deeds, each of an undivided half, which were identical in form, containing the same recitals.   The quotations hereinafter made are taken from the Jukes deed.   It contained the following :

"WHEREAS, The said Henry Jukes and Job Gothard afterwards by deeds sold and conveyed certain portions of the entirety of the premises hereinafter described to John Langston, Jubal Shaw and Samuel Bailey by separate deeds of conveyances, and took back from the said John Langston, Jubal Shaw and Samuel Bailey severally, bonds and mortgages for the respective payments of the several sums therein mentioned as securities and for the purchase monies thereof, reference to the several deeds being thereunto had will more fully appear ; and

"WHEREAS, The party of the second part has agreed to purchase of the said Henry Jukes his portion of the entirety of the premises hereinafter mentioned, subject, however, to the several equities aforesaid."

Then follows the ordinary provisions of a deed, with a description of the premises, after which appears the following :

"Nevertheless, it is hereby understood by and between the parties hereto that the said Henry Jukes, as far as in him is, not only conveys his right, title and interest in and to the premises aforesaid, but hereby sells, assigns and confirms unto the said James Hordern,. all and singular the said bonds and mortgages as far as the moiety of his interest in the premises aforesaid attaches made by the said John Langston, Jubal Shaw, Samuel Bailey, to him the said Henry Jukes and the said Job Gothard for security on their said several purchases

of portions of the property aforesaid, and all his right and interest therein and thereto, so that the said James Hordern shall stand in every respect and particular regarding the aforesaid property in the place and stead, and with the rights and title therein of the said Henry Jukes."

Hordern subsequently conveyed the premises to William Tasker, who conveyed to Sidney Harris, who died, leaving a last will and testament, which was duly admitted to probate, whereby he appointed Edward A. Harris executor with full power of sale. Harris, as executor, sold to John R. Kenneday, but he refused to complete the purchase by reason of the recitals in the Hordern deed, to which we have already called attention. Thereupon and on the 12th day of June, 1869, an action was brought to compel him to accept title. An answer was interposed and a reference was had to Oscar H. Stearns to take proof of the facts and circumstances at issue in the case and to report the same with proofs and testimony taken before him to the court. He thereupon made his report, and afterwards and on the 16th day of June, 1869, judgment was. entered in which it was adjudged and decreed that the objections of the defendant to the title to the lands be overruled, it appearing that the recitals in the deeds set forth in the answer are mis-recitals and are not true ; that no deeds were ever given to John Langston, Jubal Shaw and Samuel Bailey by Job Gothard and Henry Jukes, or either of them; that executory contracts made with said persons were canceled and surrendered to James Hordern, the grantee of said Jukes and Gothard. It was further ordered and adjudged that John R. Kenneday specifically perform his contracts. Thereupon Kenneday took title and conveyed the same to the plaintiff.

It first becomes important to consider the effect of the judgment entered in the action of *Harris* v. *Kenneday.* As we have seen only four days elapsed between the service of the summons and the entry of final judgment. The only evidence reported by the referee was the affidavits of Henry Jukes, Job Gothard and James Hordern. It does not appear that any oral examination was had. Jukes in his affidavit says that

he had some recollection of making a contract with John Langston, Jubal Shaw and Samuel Bailey in relation to the sale of lots ; that he supposes he received some money on the contracts, but does not know how much; that he believes, or at least has no recollection that any deeds were executed, or if ever executed were not passed by deponent to Langston, Shaw or Bailey. Gothard says that he remembered making contracts with John Langston, Jubal Shaw and Samuel Bailey for the sale of land bought by him of Delmonico ; that he received, he thinks, a small amount of money from each of the parties on the contract; that he thinks no deeds were executed by him under his contracts and he received no mortgages; if he had he would have put them on record ; that he sold his interest in the property subject to the contracts to James Hordern. Hordern swore that he bought the property subject to certain contracts made with John Langston, Jubal Shaw and Samuel Bailey for deeds to be executed and mortgages to be received, but that they failed to comply with the contracts, and no deeds or mortgages were ever made or executed, and all of the contracts were surrendered to him to be canceled, and were delivered over to Tasker, his grantee ; that Langston built a house on the premises, which he allowed him to take off and remove as a consideration for his surrender and cancelment of his agreement; that he is sure no deeds or mortgages were ever on the lots or any part of the same in pursuance of the contracts. This was all of the evidence given upon which that judgment was entered.

It will be observed that Jukes and Gothard have no distinct recollection in reference to the execution of deeds to Langston, Shaw and Bailey. They think they executed none, or if they did that they were not delivered, and they think that no mortgages were received back. It is not pretended that Hordern was in a position to have personal knowledge as to whether they did or did not execute and deliver such deeds. Langston, Shaw and Bailey were not parties to that action. They consequently were not bound by the adjudication there made. Neither is the same binding upon the defendant in

this action. We must, therefore, regard the question here presented the same as if the adjudication in the Harris action had not been made.

The lands in question are vacant, having never been occupied. The plaintiff's title is such only as Hordern obtained through his deeds from Jukes and Gothard. Those deeds do not purport to convey the absolute fee to Hordern, but specifically reserve that conveyed to Langston, Shaw and Bailey, and provides that Hordern "shall stand in every respect and particular regarding the aforesaid property in the place and stead and with the rights and title therein" of Jukes and Gothard.

It is claimed that an examination of the register's office in the county of Kings fails to disclose any record of the deeds to Langston, Shaw and Bailey ; that the recitals in the deeds only amount to constructive notice and cast upon the purchaser the duty of ascertaining from the records the extent and nature of their conveyances and that inasmuch as the record disclosed nothing the purchaser took absolute title in fee.

The question thus presented is not free from difficulty, but we incline to the opinion that the rule thus invoked does not and should not extend to the case under consideration. As we have seen, the Hordern deed specifically reserves therefrom the lands conveyed to Langston, Shaw and Bailey, "reference to their several deeds being thereunto had will more fully appear." Hordern would not, therefore, under the deed, take any title to that which had previously been conveyed to these parties. True, those deeds do not appear to have been recorded. They, however, may be in existence, and may hereafter be produced for record, and if they should, we do not understand that there is anything in the provisions of the Recording Act that would prevent the grantees therein named from claiming the lands described in their deeds. Conveyances not recorded are void as against subsequent purchasers in good faith and for a valuable consideration for the same real estate or a portion thereof, but if the purchaser has notice of such unrecorded deed he cannot claim the benefits of the act. Here the recitals

in the Hordern deeds give notice of the existence of such unrecorded deeds.

In the case of *Sanders* v. *Townshend* (89 N. Y. 623), the action was ejectment and not for specific performance of a contract to purchase. Townshend held a deed which conveyed certain lots, specifically describing them. It also conveyed all other lands contained within the limits of the Harlem commons, as described on the map of Charles Clinton, "not heretofore conveyed by the parties of the first part." The party of the first part therein referred to formerly owned the entire tract known as the Harlem commons and had conveyed therefrom various lots of land. An examination of the records failed to disclose any previous conveyance of the lots in controversey. It was, therefore, held that Townshend had a paper title good on its face against the grantor, and good as against the world, except some person who could show an earlier conveyance from Townshend's grantor.

This case does not sustain the appellant's position, for it distinctly recognizes the rights of those holding prior grants.

The case of *Dow* v. *Whitney* (147 Mass. 1), also relied upon by the appellant, does not appear to be in point. In that case the deed contained a specific description of the granted premises, and then concluded by stating that they were the same premises that were conveyed to the grantor by a certain deed which conveyed a larger tract, and then recited that the conveyance was of all the land conveyed by the deed except such portions thereof as the grantor had theretofore sold. It was held that the recital did not operate to alter the description or limit the prior granting clause of the deed, but was a reference merely to the grantor's chain of title.

The defendant is entitled to a marketable title free from reasonable doubt. The records of the register's office do not show such a title. Its validity depends upon the determination of the fact as to whether deeds were in fact given to Langston, Shaw and Bailey, and the rule is that specific performance will not be decreed when the title depends upon a disputed question of fact outside of the record about which there is reason-

able doubt, when the parties interested in such determination are not before the court. (*Fleming* v. *Burnham*, 100 N. Y. 1; *Kilpatrick* v. *Barron*, 36 N. Y. S. R. 15–20.)

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.