L. C. STROH & SONS, INC., Appellant, *v.* BATAVIA HOMES & DEVELOPMENT CORP., Respondent.

Fourth Department, December 6, 1962.

*Stakel, Suttell & Found* for appellant.

*Darch, Noonan & Hughes* for respondent.

WILLIAMS, P. J. The problem is whether a reference to an unrecorded contract contained in a prior conveyance in the chain of title to the premises in question renders the title unmarketable.

There is a contract in existence whereby the plaintiff is to sell and the defendant is to purchase the premises if plaintiff can "furnish * * * a good and marketable title, free and clear from liens and encumbrances." This action is to specifically enforce that contract with an incidental prayer that the court declare the title to be marketable.

The exact language of the recital is: "Subject to the terms of an unrecorded contract made by and between Jessie W. Allen and Walter and Albert Stroh."

It is contended by plaintiff and not disputed by defendant that there is nothing on record pertaining to such unrecorded contract, that plaintiff has been unable to find such contract and that neither defendant nor any person in the chain of title has any knowledge of its contents.

The Trial Justice held that title was unmarketable, stating: "It [the recited contract] could be a lease, an option to purchase, a reservation, or conditioned upon the happening of some event or any other unforeseen conditions which would amount to a restriction on the sale of this real property."

The case of *Dingley* v. *Bon* (130 N. Y. 607) was persuasive to the Trial Justice. However, more properly controlling is section 291-e of the Real Property Law, which became effective September 1, 1961. Its enactment was actuated to a large extent to overcome and relax the effect of the doctrine of *Dingley* v. *Bon* and thus to facilitate the transferability of real estate titles.

In the *Dingley* case a prior conveyance recited that grantors had conveyed portions of the premises and had taken back mortgages and that grantors intended to convey their interests in the premises and the mortgages. The court found that this clause created unmarketability. That decision established the law of this State and remained the controlling authority from its date (1892) until the enactment of section 291-e of the Real Property Law.

When section 291-e was introduced, it was supported by a note of the Law Revision Commission (N. Y. Legis. Doc., 1960, No. 65(E), p. 175). The general tenor of the note discloses that the section was designed to apply to circumstances such as now confront us. It was intended to eliminate questions of marketability where they formerly existed and to obviate the necessity of an inquiry by a prospective purchaser because of notice gained through language similar to that involved in the present case.

The note discusses the quandry of a purchaser who might be properly concerned with how other title examiners might react to such a clause in the event of his subsequent disposition of the property. It discusses the need for elimination of this potential threat to practical marketability, and finally it is stated: "It is that uncertainty of application [of uniform standards] that has led to enactment of legislation in various states limiting the effect of indefinite references." (N. Y. Legis. Doc., 1960, No. 65(E), p. 244.) In other words, the section was intended to overcome rejections by overtechnical or fastidious title examiners.

With all of this in mind, an examination and analysis of the precise language of the section is revealing. The pertinent parts are as follows:

"1. This section applies to any language, contained in a conveyance of real property in this state, which (a) excepts or reserves a part or any or all parts of the described premises which have been or may have been previously conveyed, or previously contracted to be sold or exchanged, by the grantor or by a previous owner, or (b) otherwise indicates that the premises or some part or parts thereof have been or may have been previously conveyed or that a contract has been or may have been previously made for the sale or exchange of all or some part or parts thereof, or (c) indicates that only such part of the premises described is intended to be conveyed as the grantor, or a previous owner, has not previously conveyed or has not previously contracted to sell or exchange, and, in any of the cases described in this subdivision, fails to identify the premises previously conveyed or contracted to be sold or exchanged in any other manner than by indicating that a conveyance or contract has previously been made or indicating the fact or possibility that one or more conveyances or contracts have been or may have been previously made.

"2. An exception, reservation or recital described in subdivision one of this section is (a) void as against a subsequent purchaser in good faith and for a valuable consideration, without any other notice of the identity of the premises to which it refers, and (b) ineffective as against such subsequent purchaser to give notice of the previous conveyance or contract so referred to or create any duty of inquiry with respect thereto, unless, in either case, such previous conveyance or contract is sufficient to identify the premises to which the exception, reservation or recital refers and is recorded as provided in this article before the recording of the instrument by which the subsequent purchaser acquires his estate or interest."

The language of the recital: "Subject to the terms of an unrecorded contract" is well within the language and contemplation of the section. In fact, the section goes far beyond protecting against difficulties arising under a clause of such simplicity. The language of the recital should receive its normal and ordinary interpretation. Subdivision 3 of section 240 of the Real Property Law provides that "Every instrument creating, transferring * * * an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." The Court of Appeals has stated that "when words in a deed 'have a definite and precise meaning, it is not permissible to go elsewhere in search of conjecture in order to restrict or extend the meaning' (*Uihlein* v. *Matthews,* 172 N. Y. 154, 159, and cases cited). That is the first rule of construction, and in this case we need no other." (*Loch Sheldrake Associates* v. *Evans,* 306 N. Y. 297, 305.) Employing these rules of construction and interpretation we are led to conclude that the "unrecorded contract" was undoubtedly a contract to purchase the property. A strained interpretation should not be employed to defeat the purpose and clear intent of the section which, itself, should be construed to effectuate its beneficial purposes and aspects. Otherwise the benefits which it contemplates might, at least in many instances, be denied.

The Trial Justice, as we have pointed out, said that the reference might be to "a lease, an option to purchase" among other things. However, a lease or an option to purchase is specifically included in the coverage of the section by paragraph (b) of subdivision 3, which defines a contract for sale as including an option to purchase or a lease. There is nothing in the simple language of the recital to give rise to a determination that the reference is to "a reservation, or conditioned upon the happening of some event or any other unforeseen conditions which would amount to a restriction on the sale." However, even if the language were so construed the statute would include and encompass it.

It has been said that cases such as *Dingley* v. *Bon* (130 N. Y. 607, *supra*) are inconsistent with the general tenor of the statutes which require recording for the protection of interests. (Jones, The New Jersey Recording Act — A Study of Its Policy, 12 Rutgers L. Rev. 328, 349; American Bar Association, 1958 Report of the Section of Real Property, Probate and Trust Law, p. 69.) Further, the modern trend favors facility and freedom of transferability and the relaxation of former restrictive barriers. (*Nichols* v. *Haehn,* 8 A D 2d 405; note, McKinney's 1962 Session

Laws of New York, p. 3411; Real Property Law, §§ 59, 103, 345, 346, 532-a.) Said section 291-e takes its place in the recording statutes of this State. It expressly relieves a prospective purchaser from the obligation of inquiring or examining into the facts and states that an exception, reservation or recital gives no notice beyond the recital itself. In other words, it rescinds the former rule that, upon notice of a recital such as that in question, one who was interested as a potential purchaser would have been charged with any knowledge that a reasonable inquiry would have produced.

No construction of this statute by the courts of this State has come to our attention. Similar statutes have been enacted in Colorado, Massachusetts and New Jersey. (Colo. Rev. Stat., § 118–6–8; Mass. Ann. Laws, ch. 184, § 25; N. J. Stat. Ann., § 46:22–2.)

In the case of *Mishara* v. *Albion* (341 Mass. 652, 654), the clause in question, contained in an intermediate conveyance, was '' said conveyance being further subject to any and all easements and restrictions lawfully existing in, upon or over said land or appurtenant thereto.'' The court held that this language came within the scope and comprehension of the section and determined that title was not unmarketable. We need not recite the entire Massachusetts statute, but a pertinent portion thereof is: '' No indefinite reference in a recorded instrument shall subject any person not an immediate party thereto to any interest in real estate, legal or equitable, nor put any such person on inquiry with respect to such interest, nor be a cloud on or otherwise adversely affect the title of any such person acquiring the real estate under such recorded instrument if he is not otherwise subject to it or on notice of it.'' (Mass. Ann. Laws, ch. 184, § 25.) (See, also, *Rocky Mt. Fuel Co.* v. *Clayton Coal Co.*, 110 Col. 334.)

We conclude that the title is not unmarketable and that the plaintiff is entitled to a declaration to that effect, with a direction that the defendant be required to perform his part of the purchase contract.

Bastow, Goldman, McClusky and Henry, JJ., concur.

Judgment and order unanimously reversed on the law, without costs of this appeal to either party, and judgment of specific performance awarded in favor of plaintiff, without costs, and title declared to be marketable.