156

ROBERT F. CORNING et al., Respondents, *v.* LEHIGH VALLEY RAIL-
ROAD COMPANY et al., Appellants.

PAUL T. MYERS et al., Respondents, *v.* LEHIGH VALLEY RAILROAD
COMPANY et al., Appellants.

CLAYTON W. SMITH et al., Respondents, *v.* LEHIGH VALLEY RAIL-
ROAD COMPANY et al., Appellants.

ROBERT W. HABERSAAT et al., Respondents, *v.* LEHIGH VALLEY
RAILROAD COMPANY et al., Appellants.

Fourth Department, June 30, 1961.

*Frederick B. Bryant* for appellants.

*William S. Elder, Jr.,* for Robert F. Corning and others, respondents.

*Ernest A. Dahman, Jr.,* for Clayton W. Smith and others, respondents.

HALPERN, J.   The question presented in this case is whether the defendant Lehigh Valley Railroad Company, as the successor to the Cayuga Lake Railroad Company, owned the land occupied by it as part of its right of way in fee simple or whether it merely had a railroad easement.

The Cayuga Lake Railroad Company was incorporated on July 1, 1867 under chapter 140 of the Laws of 1850 for the pur-

pose of constructing a railroad from the tracks of the New York Central Railroad at Auburn, New York, to Ithaca, New York. The articles of association stated that the length of the proposed railroad line was 37 miles. (See *Cayuga Lake R. R. Co.* v. *Kyle*, 64 N. Y. 185.)

Immediately after its incorporation, the railroad company entered into an agreement with one Daniel Valentine, the owner of a farm on the east shore of Cayuga Lake, for the acquisition of the lands needed for the railroad line along the lake shore, across the Valentine farm. The agreement was dated " July— 1867; " it was under seal and it read as follows: " [T]he said Daniel Valentine, in consideration of the sum of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, hereby promises and agrees to and with the said Railroad Company to grant and convey to said Company, free of encumbrance and by a good and sufficient deed, all the land that said Company may require for the construction and convenient use of their Railroad, upon and across the lands of said Daniel Valentine, along the Lake Shore, situated in the town of Genoa, County of Cayuga, in the State of New York, and being a part of Lot No. 22, whenever said Company shall have finally built their Railroad ~~and shall tender to said~~ ............... ~~the further sum of~~ ............... ~~dollars for each acre thereof~~ and a deed conveying the same."

On the back of the agreement there was the following notation: " This contract is on condition that the Rail Road Company shall have a Station at or near what is known as the ' Atwater Landing ' for the accommodation of passengers and freight."

The agreement was recorded October 11, 1879.

It is undisputed that the language of the agreement is language which, if incorporated in a deed, would have been sufficient to convey to the railroad company a fee simple. Valentine agreed " to grant and convey * * * by a good and sufficient deed, all the land " etc. These are the appropriate terms for the conveyance of a fee. There is no reference in the agreement to a railroad easement.

The railroad company apparently never obtained a deed in accordance with the agreement but it went into possession under the agreement and built its railroad. This satisfied the provision requiring the building of a railroad as a condition of the giving of a deed. It is also undisputed that the condition imposed by the memorandum on the back of the agreement was satisfied by the railroad's establishing a station at Atwater Landing. The railroad company therefore became entitled to a deed conveying to it a fee simple absolute.

The railroad was operated until sometime in the 1950's when the defendant discontinued the railroad operation.

Through mesne conveyances, the plaintiffs had acquired parcels of land carved out of the Valentine farm. They brought these actions in 1958, under article 15 of the Real Property Law, seeking an adjudication that they owned the land occupied by the railroad line. Notwithstanding the language of the Valentine agreement, the trial court held that the plaintiffs owned the fee, and that the railroad company only had a railroad easement, and gave judgment accordingly. Upon appeal to this court, the defendant railroad company maintains that it is the owner in fee simple absolute of the land occupied by its right of way. We are in agreement with this contention.

The description in the agreement was sufficiently definite to vest in the railroad company ownership of the strip of land occupied by it under the agreement (*Lipton* v. *Bruce,* 1 N Y 2d 631). The proof upon the trial established the precise width of the strip of land occupied by the railroad.

As has been stated, it is undisputed that under the language of the agreement, Valentine was bound to convey a fee to the railroad company. In the absence of a deed, the interest of the railroad company was that of the owner of an equitable fee, since the agreement was one which was specifically enforcible by the railroad company, after it had made expenditures in reliance thereon and had built the railroad in accordance with the terms of the agreement (Restatement, Contracts, §§ 366, 372; 5 Williston, Contracts [rev. ed.], § 1439; cf. *Epstein* v. *Gluckin,* 233 N. Y. 490).

However, the plaintiffs argue that, notwithstanding the language of the agreement, the railroad company acquired only an easement or an equitable right thereto because of the provisions of the Railroad Law of 1850 under which the Cayuga Lake Shore Railroad Company had been incorporated (L. 1850, ch. 140). The plaintiffs rely upon section 28 of that law, which enumerated the powers of railroad corporations formed thereunder. Among various powers, the railroad company was given the power by subdivision 2 of section 28: " To take and hold such voluntary grants of real estate and other property as shall be made to it, to aid in the construction, maintenance and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only ".

It should be noted that in 1869 a special act was passed (L. 1869, ch. 314) to facilitate the construction of the Cayuga Lake Railroad and that under that special act the railroad company was entitled to receive " any gift or grant of any land " as an

aid to construction of the railroad (§ 13). There was no provision in the 1869 act that the lands so received should be "held and used for the purposes of such grant only", such as appears in the 1850 act. It is this provision in the 1850 act upon which the plaintiffs place reliance. They contend that in view of this provision a voluntary grant to a railroad company incorporated under the 1850 act can convey to the railroad only a railroad easement, regardless of the terms of the grant. If this were true, it would give railroads incorporated under the 1850 statute a different status from that of railroads incorporated either under earlier or later statutes which did not contain the special provision with respect to voluntary grants. For example, the grant involved in the case of *Nicoll* v. *New York & Erie R. R. Co.* (12 N. Y. 121, 122) was a voluntary grant in the same sense in which the grant in this case was a voluntary one since it was given "in consideration of the benefits and advantages" to the grantor of the railroad proposed to be built and of "one dollar" paid by the railroad company. The court held that, under this grant, the railroad company took a fee. See, also, *Matter of City of Buffalo* (206 N. Y. 319) in which the court stated (p. 330): "We can find nothing in the Railroad Law which contravenes or changes this rule [the rule that a railroad company may take a fee]".

We do not believe that the section of the 1850 Railroad Law was meant to have the drastic effect claimed by the plaintiffs. First of all, subdivision 2 of section 28, upon which the plaintiffs rely, merely says that the real estate received by voluntary grant shall be held and used "for the purposes of such grant only". This makes the interest of the railroad company depend upon what the grant says. If the grant is a grant in fee simple, without any condition or limitation, the railroad company takes a fee simple absolute. Furthermore, it is to be noted that the subdivision relied upon by the plaintiffs is simply part of an enumeration of the railroad company's powers. Even if the statute were construed as permitting a railroad company to take only a limited interest by voluntary grant and, in violation of the statute, the railroad company took a deed in fee simple, the most that could be said would be that it was an *ultra vires* act which might be attacked by the public authorities, but the deed would nevertheless be effective to vest title in the railroad. The conveyance "is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding for that purpose. (*National Bank* v. *Matthews*, 98 U. S. 621, 628.)" (*Burden* v. *Burden*, 159 N. Y. 287, 304; see, also, 51

C. J., Railroads, p. 508; 74 C. J. S., Railroads, § 73.) Finally, even if the statute were to be given the effect claimed by the plaintiffs and a provision were to be read into every voluntary grant to a railroad company that the land granted should be held and used for railroad purposes only, it would not follow that the railroad company's interest would be thereby reduced to a railroad easement. If the assumed provision were followed by an express provision that the estate of the railroad should terminate upon the cessation of the railroad use and that the estate should thereupon revert to the grantor and his heirs, the estate of the railroad company would be a fee upon special limitation or a base or qualified fee but it would nevertheless be a fee (*Nichols* v. *Haehn,* 8 A D 2d 405). There was no provision in the agreement in this case for a termination of the railroad's interest or a reversion upon cessation of the railroad use. In the absence of such a provision, the assumed provision limiting the use to which the property could be put would be at most a covenant, enforcible in equity but not affecting the title of the railroad company. The railroad company would take a fee simple (*Kenney* v. *Wallace,* 24 Hun 478; *Allen* v. *Trustees of Great Neck Free Church,* 240 App. Div. 206; *Concklin* v. *New York Cent. & Hudson Riv. R. R. Co.,* 149 App. Div. 739, 742, appeal dismissed 207 N. Y. 752; *Buttery* v. *Rome, Watertown & Ogdensburg R. R. Co.,* 14 N. Y. St. Rep. 131). This would be particularly true in a case in which the deed contained a specific condition requiring the building of a railroad and the condition had been fully satisfied, as it was in this case. After satisfying the express condition, the railroad company's estate would become a fee simple absolute, notwithstanding any general statement in the deed as to the purposes for which the land should be used in the future.

It must therefore be concluded that the section of the Railroad Law of 1850 relied upon by the plaintiffs does not support their claim that the railroad company acquired only a railroad easement under the Valentine agreement. Under the agreement, the railroad company became the equitable owner of a fee interest in the land subject to the condition that a railroad be built and, upon the performance of that condition, the railroad company became the equitable owner in fee simple absolute.

The trial court did not rest its decision that the plaintiffs owned the fee and that the defendant only had a railroad easement upon any disagreement with any part of the reasoning set forth above. On the contrary, the court held that it was unnecessary for it to decide the nature of the interest acquired by the railroad company under the Valentine agreement because,

it said, even if the railroad company had acquired a fee, the fee had been lost by virtue of its failure to record the agreement and by virtue of the subsequent acquisition of the fee of the whole Valentine farm by the plaintiffs' predecessor in title for value, without notice of the railroad company's interest. The court further held that the continued use by the railroad company thereafter gave rise only to a railroad easement by adverse possession or prescription.

The subsequent conveyance referred to by the trial court was a deed dated March 29, 1875, recorded in the Cayuga County Clerk's office on June 1, 1875, by which Valentine conveyed his farm to one Lyon. However, there was a provision in the deed " excepting and reserving a right of way in and across the west portion of said above described premises for the Cayuga Lake Shore Railroad (so-called) ". Through mesne conveyances, various parcels carved out of the land conveyed to Lyon passed to the plaintiffs. It was found by the trial court that the prior recording of the Lyon deed gave the grantee thereunder a right superior to that of the railroad under the Recording Act (Real Property Law, §§ 290, 291). Strictly speaking, the Recording Act did not have any application to the case since there was no obligation under that act to record an executory contract for the conveyance of real property and, under the act as it read at that time, the mere recording of the contract would not have been of any value in charging subsequent purchasers with constructive notice (*Schultz & Son* v. *Nelson,* 256 N. Y. 473, 476; cf. Real Property Law, § 294, as amd. by L. 1940, ch. 745). The plaintiffs' claim really rests upon the nonstatutory doctrine that a prior equitable right is cut off by the subsequent acquisition of the legal title by an innocent third party for value, without notice of the pre-existing equity. (19 Am. Jur., Equity, § 488; 55 Am. Jur., Vendor and Purchaser, § 651.)

It is difficult to see how that doctrine can be applied in this case so as to vest a superior title in the plaintiffs. First of all, the deed by Valentine to Lyon expressly excepted the land occupied by the railroad right of way from the scope of the conveyance. The deed did not convey the whole farm " subject to " the railroad's right of way; it " excepted " the railroad's right of way from the description of the land conveyed. The plaintiffs' predecessor was, therefore, not a grantee of the land occupied by the right of way at all (*West Point Iron Co.* v. *Reymert,* 45 N. Y. 703). Even if there had been a reversionary interest in the grantor with respect to that strip of land, it would have remained in him and ultimately passed to his heirs (*Munn* v. *Worrall,* 53 N. Y. 44; *Lipetz* v. *Papish,* 283 App. Div. 1065,

affd. 308 N. Y. 787; *Hall* v. *Wabash R. R. Co.*, 133 Iowa 714; 51 C. J., Railroads, p. 546; 74 C. J. S., Railroads, § 88, p. 482). Even in a case in which a conveyance was made of the entire tract " subject to " a prior conveyance to a railroad company of a determinable fee in its right of way, this court held that there was a question of fact to be resolved upon a trial as to whether the subsequent grantee acquired the reversionary interest of the grantor (*Nichols* v. *Haehn*, 8 A D 2d 405, *supra*). In the present case, by virtue of the express exception, the subsequent conveyance to Lyon did not convey any interest of the grantor in the land occupied by the railroad right of way, and there was therefore no subsequent conveyance which could have the effect of cutting off the railroad company's equitable fee.

Secondly, even if the exception in the Lyon deed did not have the effect of completely excluding the railroad strip from the scope of the conveyance, it constituted express notice of whatever rights the railroad company had in that strip of land, and Lyon and his successors cannot claim to be innocent purchasers without notice of the existing equity (*Dingley* v. *Bon*, 130 N. Y. 607; *West Point Iron Co.* v. *Reymert*, 45 N. Y. 703, *supra*). The plaintiffs argue that the words " excepting and reserving a right of way " gave notice to Lyon, the grantee, only of a prior grant of a railroad easement and that, without further inquiry, he had the right to accept the deed on the assumption that he was taking only subject to an easement. This contention is untenable. The words " right of way " as applied to the land occupied by a railroad line do not necessarily signify that the railroad only has a railroad easement. The term " right of way " has a special significance with respect to railroads very different from the meaning of the term as generally used in real property law. In the latter case, the term " right of way " means an easement giving one the right to make a transitory crossing over the land of another. Obviously, this is not applicable to a railroad with a permanently fixed line of track. A railroad " right of way " means the land occupied by the railroad tracks and the strips of land immediately adjacent to the tracks on each side. The nature of the railroad company's interest in the right of way depends upon the terms of the conveyance by which it was acquired (74 C. J. S., Railroads, § 83). The railroad's interest may be merely a railroad easement if, in the particular case, the agreement or deed expressly or by implication limited the railroad's interest to an easement. On the other hand, the railroad's interest in its right of way may be a fee simple absolute, a fee on special limitation or a fee on condition subsequent, depending upon the terms of the grant under which the railroad

acquired the right of way and the intention of the grantor, expressed or implied. The use of the term "right of way" to describe a right of way owned by a railroad in fee is quite common (see 51 C. J., Railroads, § 201, p. 537; 74 C. J. S., Railroads, § 84). See, also, as illustrating the statutory use of the term, the definition of "right of way" in subdivision 10 of section 63 of the Conservation Law. A right of way is there defined as "the land adjacent to the tracks of a railroad * * * *owned* by them [the railroad company]". (Emphasis added.)

The exception of the railroad right of way in the Lyon deed therefore gave notice to the grantee that the railroad had an interest which might range all the way from a mere easement to an absolute fee. If, as has been demonstrated above, the railroad company had a fee simple, Lyon had notice of it.

In any event, the exception in the deed was sufficient to require the grantee to make inquiry of the railroad as to the nature of its interest, and to charge him with notice of whatever would have been disclosed by such inquiry (*Dingley* v. *Bon, supra*; *West Point Iron Co.* v. *Reymert, supra*). (See 1960 Report of N. Y. Law Rev. Comm., McKinney's Session Laws, 1960, p. 1822, for the Law Revision Commission's recognition of the fact that this was the existing rule of law, which it recommended be modified by the bill which became chapter 688 of Laws of 1960, adding section 291-e to the Real Property Law.) The railroad's name was specifically set forth in the exception in the Lyon deed and Lyon was given notice of the identity of the company of which inquiry should be made, if he wished to know the exact nature of the interest which the railroad had.

Each of the deeds in the plaintiffs' chain of title contained an exception similar to that in the Lyon deed, with some variations and additions.

It should be borne in mind that the phrase "right of way" in the exception in the Lyon deed is being here analyzed solely from the standpoint of its sufficiency to give notice to the grantee of the nature of the railroad company's interest in the premises (*West Point Iron Co.* v. *Reymert, supra*, p. 707). The railroad's interest does not depend upon the language of the exception in the deed. As has been pointed out above, the railroad's interest was acquired under an agreement which used language concededly sufficient to convey a fee.

The proof upon the trial was obscure as to when the railroad company took possession of the strip of land. The trial court found that the railroad company went into possession at some time between 1867 and 1879 and it noted that there was no

evidence that the railroad company was in possession in 1875 when the deed was given by Valentine to Lyon. However, independent research by this court has produced undisputable record proof that the railroad line had been built prior to December 1, 1871. The Report of the State Engineer and Surveyor for the year 1871 shows that the Cayuga Lake Railroad Company had built 38 miles of road that year (see Annual Rep. of State Engineer and Surveyor for 1871, tabulation compiled from the Annual Reports of Railroads, p. 161). The prior report for the year 1870 (p. 143) showed that no part of the Cayuga Lake Railroad had yet been built. See, also, the Annual Report of the Cayuga Lake Railroad Company filed in the office of the State Engineer and Surveyor dated December 1, 1871, showing that its railroad line, 38 miles in length, had been completed. (This report is reproduced at pp. 416 to 417 of the Report of the State Engineer and Surveyor for 1871.) All these documents are on file in the office of the Public Service Commission. '' We may properly take judicial notice of [these facts] appearing as a matter of undisputed and indisputable public record '' (*Sease* v. *Central Greyhound Lines,* 281 App. Div. 192, 194, revd. on other grounds 306 N. Y. 284; see, also, *Ripley* v. *Storer,* 309 N. Y. 506). It may also be noted that under the Railroad Law of 1850 (L. 1850, ch. 140) a railroad incorporated under that act was required to complete construction of its road within five years of the filing of the articles of association (§ 47). That would mean that the construction of the Cayuga Lake Railroad Company line was required to be completed by July 1, 1872. Since no action or proceeding to annul the charter of the company was brought, it may be presumed that the railroad line was built within the time specified in the statute.

Upon the basis of the official records, we have no hesitancy in finding that the railroad line had been built and that the railroad was in possession of the land occupied by its right of way in 1875, when the deed from Valentine to Lyon was given. The possession by the railroad company would have been sufficient of itself to give notice to the grantee of the railroad company's interest, even if there had been no express exception in the deed. '' Actual possession of real estate is sufficient notice * * * to all the world of the existence of any right which the person in possession is able to establish '' (*Phelan* v. *Brady,* 119 N. Y. 587, 591–592).

It is argued by the plaintiffs (although this was not the ground of the trial court's decision) that the right to enforce specific performance of the agreement between Valentine and

the railroad company is barred by the lapse of the 10-year Statute of Limitations (Civ. Prac. Act, § 53), which they contend began to run upon the completion of the construction of the railroad. But the Statute of Limitations does not run against the right of a vendee in possession (*Gifford* v. *Whittemore,* 4 A D 2d 379, 385; cf. *Ford* v. *Clendenin,* 215 N. Y. 10, 16–17; *Cameron Estates* v. *Deering,* 308 N. Y. 24). On the contrary, if all the conditions of the agreement had been complied with by the vendee, as they were here, there is a presumption, after the statutory period of limitation has run, that the vendor had given the vendee a deed in performance of his obligation (*Cherrington* v. *South Brooklyn Ry. Co.,* 180 App. Div. 659, 666). "Under such circumstances, after the lapse of twenty years, it would probably be the duty of a jury to presume a conveyance in conformity to the agreement" (*Miller* v. *Bear,* 3 Paige Ch. 466, 467). That presumption is applicable here.

In any event, even if it is assumed that the right to specific performance had become barred by lapse of time, the railroad company's continued possession for three quarters of a century thereafter, in accordance with the terms of the agreement, constituted adverse possession under a claim of fee ownership and the railroad company acquired a fee by adverse possession.

It is therefore our conclusion that the railroad company has a fee simple absolute in the land occupied by its right of way. The judgments declaring that the plaintiffs owned the fee and that the railroad company only had a railroad easement in the land occupied by the railroad right of way, within the limits of the parcels described in the complaints, should therefore be reversed and judgment entered declaring that the plaintiffs have no estate or interest in that land and that the defendant railroad company is the owner thereof in fee simple absolute.

All concur. Present — WILLIAMS, P. J., GOLDMAN, HALPERN, McCLUSKY and HENRY, JJ.

Judgments unanimously reversed on the law and facts and judgment directed to be entered in accordance with the opinion, without costs of this appeal to any party. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.