694

Carl E. ABBOTT et ux *v.* C. T.
PEARSON Jr., et al

74-227                                   520 S.W. 2d 204

Opinion delivered March 3, 1975

*Daily, West, Core & Coffman*, by: *Thomas A. Daily*, for appellants.

*Pearson & Woodruff*, by: *Ronald G. Woodruff*, for appellees.

GEORGE ROSE SMITH, Justice. The appellants, husband

and wife, filed this suit to quiet their title to part of a recently abandoned railroad right-of-way and to cancel a deed by which the railway company had purportedly conveyed the disputed part of the right-of-way to the appellee Pearson. This appeal is from a final order sustaining a demurrer to the appellants' complaint, for failute to state a cause of action. The key question is whether the property description in the 1954 deed by which the appellants acquired their land must be said as a matter of law to have conveyed no interest whatever in land lying within the boundaries of the railroad right-of-way. Inasmuch as we have concluded that such a rigid interpretation of the deed is not necessarily the proper construction of its language, we hold that the demurrer to the complaint should have been overruled.

According to the complaint, with its exhibits, in 1881 certain landowners executed a right-of-way deed to the Frisco Railroad's predecessor, "for the purpose of constructing and operating said Railway and the necessary conveniences and uses thereto attaining." The easement appears to have been 300 feet wide for a distance of 1,500 feet and 100 feet wide for the remaining length of the grantors' 80-acre tract. The deed provided that if the grantee ceased to use the land for the specified purposes the title would revert to the grantors or their heirs or assigns.

Apparently both the right-of-way and contiguous lands were thereafter platted as lots and blocks within the city of Fayetteville. In 1954 the appellants purchased lots that were abutted at the rear by the railroad right-of-way. The warranty deed to the appellants described the property as a certain Lot 12 and part of Lot 11, "except that part of it in the Frisco Railroad right-of-way." The railroad company was then still claiming the right-of-way.

In 1968 the Frisco abandoned part of its right-of-way and by quitclaim deed conveyed it to the appellee Pearson. (The deed to Pearson also included Lot 16, but in their brief the appellants have relinquished the claim which their complaint originally asserted to that lot.) We are not now concerned about whether the Frisco's deed actually conveyed title to Pearson, for the appellants must recover on the strength of their own title.

The disputed question of law centers upon the quoted language in the appellants' deed, "except that part of it in the Frisco Railroad right-of-way." At the outset it is essential to bear in mind the sound distinction, recognized by our decisions, between a description purporting to stop at the edge of an abandoned right-of-way and one purporting to stop at the edge of a right-of-way still in use. We considered the former type of description in *Pyron* v. *Blanscet*, 218 Ark. 696, 238 S.W. 2d 636 (1951), where the grantor's deed to the appellees contained a metes and bounds description extending to the edge of an abandoned railroad right-of-way and thence along that right-of-way for a given distance. In reluctantly holding that the grant did not extend to the center of the abandoned strip we said:

> The appellees insist that the legal effect of their deed is to convey to the center line of the abandoned right-of-way, and several cases from other jurisdictions are cited to support this contention. In practical effect there is much to be said in favor of this view, since the opposite rule often leaves in the grantor the ownership of a narrow and inaccessible strip of an abandoned railroad right-of-way, street, alley, etc.

> The appellants rely chiefly upon *Fordyce* v. *Hampton*, 179 Ark. 705, 17 S.W. 2d 869 [1929], and with some reluctance we concede that case to be controlling. There we held that although a conveyance of land bounded by an alley is usually presumed to carry title to the center line, the presumption does not arise when the alley has been vacated or abandoned. In the opinion we recognized the fact that two lines of authority exist and chose the rule that the grantee takes to the center of an abandoned easement only when the grantor explicitly expresses that intention. Those of us who are joining in this opinion do not think the doctrine of the *Fordyce* case to be a desirable one, since a grantor does not ordinarily intend to retain title to an abandoned right-of-way that is of little practical value. But the *Fordyce* case laid down a rule of property . . . . If the rule is to be changed it should be done by legislation that operates prospectively rather than by judicial decision that is retroactive.

The rule, however, is—and should be—entirely different when the right-of-way is still in use. In that situation the conveyance extends to the center of the right-of-way *unless a contrary intention is clearly stated.* Thompson explains the sound reasons for the rule:

> The intent to convey to the middle line of the highway arises from the presumption that the adjoining owners originally furnished the land for a right-of-way in equal proportions; and from the further presumption that such owner, in selling land bounded upon the highway, intended to sell to the center line of the street, and not to retain a narrow strip which could hardly be of use or value except to the owner of the adjoining land. The public policy of discouraging separate ownership of narrow strips of land is the basis for the rule.

> \* \* \* \*·\*

> The presumption that a deed carries to the center of an abutting road applies to private as well as public roads. It also applies to railroad rights-of-way.

Thompson on Real Property, § 3068 (Repl., 1962).

As Thompson indicates, the rule favoring an extension of the conveyance to the center line of the right-of-way, "unless a contrary intention is clearly stated," rests upon two strong practical circumstances in its favor. First, that interpretation gives effect to what is almost certainly the intention of the parties. Among scores of similar statements the following comments upon the element of intention are typical:

In *Barker* v. *Lashbrook,* 128 Kan. 595, 279 P. 12 (1929), the court sensibly observed that "it is difficult to conclude that businesslike people, able to own, sell, and buy land, could reasonably have had in mind, at the time of the sale and purchase, the leaving of a long, narrow strip of land through the 120-acre tract that was to remain the absolute property of the grantor in the happening of a very possible contingency."

In *Brown* v. *Weare*, 348 Mo. 135, 152 S.W. 2d 649 (1941), it was said: "We cannot conceive that it was the intention of the grantor to retain the title to the servient estate in the strip over which the right of way ran while disposing of the abutting land. Furthermore, as pointed out in *Quinn* v. *Pere Marquette Ry. Co.*, 256 Mich. 143, 239 N.W. 376, 379, the term ' "right of way" has two meanings in railroad parlance — the strip of land upon which the track is laid — and the legal right to use such strip.' See also, Tiffany Real Property, 3d. Ed., § 772. The grantor must have intended to except the use only."

Again, the principle was by no means overstated in *Shell Petroleum Corp.* v. *Ward*, 100 F. 2d 778 (5th Cir. 1939), where the court declared: "If construed as appellees would have it, a result both unreasonable and clearly unintended would have been produced.For it is inconceivable that Gregory, plaintiffs' grantee, would have bought a tract of land split into two tracts by a small narrow strip which the Canal Company was not only authorized to use as a lateral, but if appellees are right, appellees would be entitled, under the restrictions in the Canal deed, to close up and occupy and thus cut appellant's land in two.

"If construed as appellant contends it should be, every part of the deed would be harmonized and reconciled, and a result would be produced both reasonable and without doubt, in accordance with what the parties to the deed intended."

Secondly, as Thompson, *supra*, says, there is a sound public policy discouraging the separate ownership of narrow strips of land. The Kansas court, after reviewing the development of the established rule at common law, aptly summarized the considerations of public policy: "Experience revealed that separate ownership of long narrow strips of land distinct from the territory adjoining on each side, was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated." *Bowers* v. *Atchison, Topeka, & S.F. Ry.*,

119 Kan. 202, 237 P. 913, 42 A.L.R. 228 (1925).

We recognized and applied the rule in *McGee* v. *Swearengen*, 194 Ark. 735, 109 S.W. 2d 444 (1937). There the description in a deed ran in a southerly direction "to a street; thence in a westerly direction along the north line of said street" for a given distance. After recognizing the rule that a conveyance describing land as being bounded by a street or highway is generally held to indicate an intention to convey to the center thereof, we said: "When, in 1926, the appellant McGee purchased lot 8, so situated, and so described in the deed by specific measurements, projecting appellant's south line to the north line of Nance avenue, she nevertheless acquired a fee to the center of Nance avenue. *This, for the reason that there were no expressions showing an intent to limit the grant in a manner contrary to the general rule of construction.*" (Italics supplied.)

In the case at hand the chancellor reasoned that the pivotal language in the deed, "except that part of [the described lots] in the Frisco Railroad right-of-way," could not be interpreted in any way except as an exclusion of the land itself from the deed. There are two answers to that point of view. First, a reference to the right-of-way can refer to the easement only, rather than to the entire fee simple. See Thompson, *supra*, § 3069. Secondly, such language may be intended to except the easement from the grantor's warranty rather than to reserve the entire servient estate to the grantor. Thompson, § 3094. In this connection we may observe that the language of the granting clause in the appellants' deed, "do hereby grant, bargain and, sell," constitutes an express warranty in Arkansas. Ark. Stat. Ann. § 50-401 (Repl. 1971).

Judge William Howard Taft, in a statement that has been quoted many times, explained why the courts go to extreme lengths in construing narrowly such clauses as the one now in controversy: "The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds

of the abutting lots. And modern decisions are even more radical in this regard then the older cases." *Paine* v. *Consumers' Forwarding & Storage Co.*, 71 F. 626 (6th Cir. 1895).

Yet there is nothing unfair about such a strict interpretation of the language, because the draftsman of the deed has been put on notice by scores of cases that he must express his intention to reserve the servient estate so clearly that no reasonable construction can avoid his meaning. In the case at bar the draftsmen excepted that part of the lots "in" the railroad right-of-way. That language appears to be no stronger than the explicit metes and bounds description which we construed in *McGee* v. *Swearengen, supra,* yet we held the *McGee* conveyance to extend to the center of the street. Similarly, in *Kassner* v. *Alexander Drug Co.*, 194 Okla. 36, 147 P. 2d 979 (1943), the deed described only the north 120 feet of two lots, but the court held that the conveyance extended to the center of an abutting railroad right-of-way on the south. Again, in the *Shell* case, *supra,* the grantor described a tract as containing 162 acres, "except therefrom 5.6 acres taken up by the rights of way of the Neches Canal Company lateral, making 156.4 acres herein and hereby conveyed." Despite the grantor's arguable intent to convey only 156.4 acres, the court held that his deed conveyed the entire 162 acres, subject to the rights-of-way.

There is no end to the examples that might be found in the authorities (with a few contrary cases) to illustrate the rule that the grantor must clearly and unmistakably state his intention to reserve the servient estate underlying the right-of-way. We find it hard to believe that the draftsman of the deed to these appellants, had he been familiar with the law and had he meant to effect the reservation contended for by the appellee, would have contented himself with the language that he selected. It would have been so much simpler for him to have explicitly stated that the grantors were reserving to themselves the entire servient estate within the boundaries of the railroad right-of-way. Any number of methods of similarly expressing *affirmatively* the pivotal intention to reserve an interest come readily to mind.

Finally, the case reaches us on demurrer to the complaint. When the description in a deed is doubtful the court

may put itself in the position of the parties and interpret the language used in the light of attendant circumstances. *Schweitzer* v. *Crandell*, 172 Ark. 667, 291 S.W. 68 (1927). Although we think the better construction of the deed now in controversy to be that argued for by the appellants, we ought not to foreclose the possibility that extrinsic proof may be of assistance. The record does not disclose what reservations or exceptions were contained in the chain of title between the execution of the right-of-way deed to the railway company in 1881 and the execution of the warranty deed to the appellants in 1954. We do not know how much of Lots 11 and 12 were subject to the Frisco's easement. Although the Frisco's deed to the appellee shows that the company's "main track" is still upon that part of the original easement that is contiguous to the land purportedly conveyed by the Frisco to the appellee, we have no idea whether that fact indicates that the various references to the "right-of-way" may have had some reference to the strip occupied by the tracks rather than to land susceptible of being used for other railway purposes. All the foregoing questions relate to evidentiary matters not required to be included in the appellants' complaint. It is clear that the case is not one to be decided upon demurrer, upon the sole basis of a 12-word clause in the appellants' deed and without regard to what may prove to be enlightening extrinsic proof.

Reversed, the demurrer to be overruled.

FOGLEMAN, JONES and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot accept either the result reached by the majority or its premises. I do not believe that it is appropriate to apply "center of the right-of-way" presumptions in this case. Furthermore, I cannot see how either "ownership of a narrow and inaccessible strip of an abandoned railroad right-of-way" or "a narrow strip which could hardly be of use or value except to the owner of the adjoining land" is involved.

In 1881, Isaac and Mag. J. Taylor conveyed to the predecessor of appellee St. Louis-San Francisco Railway Company a tract of land. The granting clause read:

...do hereby grant, bargain, sell and convey to said Railway Company the following described tract and parcel of land situated lying and being in the County of Washington, State of Arkansas, to-wit: The East half of the Southwest quarter of Section Nine (9) in Township Sixteen (16) north of Range thirty (30) West, to-wit: A strip of land three hundred feet in width beginning on the Northern boundary line of said tract and running South with the line of Survey of said Railroad fifteen hundred feet measuring two hundred feet in width on the west side of said line and one hundred feet in width on the east side of said line and equidistance from center of said Railroad Company tract and from said point North to South boundary line of said tract a strip one hundred feet in width running with said line of survey and measuring fifty feet on either side from the center of said railway company tract said railway company, its assigns and successors. . . .

It is clear that adjoining owners did not furnish equal proportions of the tract used for railroad right of way. The Taylors furnished it all. It is also clear that the "strip" is at least 300 feet (a city block) in width and 1500 feet (five city blocks) long, with an additional strip 100 feet wide for an additional distance. Although the exact dimensions of the tract now in dispute are not clear, the railroad company conveyed 0.44 acres of this right of way in the City of Fayetteville to appellee Pearson.

The habendum clause of the deed from the Taylors to the railroad company reads:

....to have and to hold the same forever for the purpose of constructing and operating said Railway and the necessary conveniences and uses thereto attaining to which we hereby bind ourselves, our heirs, executors and administrators forever provided, however, that in case said railway company shall fail or cease to use said land for said purposes then this grant and title shall revert to the undersigned grantors, their heirs or assigns.

The conveyance under which appellants claim reads as follows:

That we, Charles E. Hughes and Ruby E. Hughes, husband and wife, for and in consideration of the sum of One Dollar and other valuable considerations to us in hand paid by Carl Abbott and Helen Abbott, husband and wife, do hereby grant, bargain and sell unto the said Carl Abbott and Helen Abbott, husband and wife, and unto their heirs and assigns, the following described land situate in Washington County, State of Arkansas, to-wit:

Lot Numbered Twelve (12) and the North sixty (60) feet of Lot Numbered Eleven (11) in Block Numbered Five (5) of Archias-Bushnell Addition to the City of Fayetteville, as designated upon the recorded plat of said addition, except that part of it in the Frisco Railroad right of way.

This deed is made subject to a mortgage in favor of the Fayetteville Building and Loan Association the unpaid balance of which in the sum of $5,982.94 the grantees herein assume and agree to pay and also subject to a second mortgage in favor of Carl Ferguson, the unpaid balance of which in the sum of $690.00, the grantees assume and agree to pay as a part of the consideration of this conveyance.

To Have and to Hold the said lands and appurtenances thereunto belonging to said Carl Abbott and Helen Abbott, husband and wife, and unto their heirs and assigns, forever. And we, the said Charles E. Hughes and Ruby E. Hughes, husband and wife, hereby convenant that we are lawfully seized of said land and premises; that the same is unincumbered, and we will forever warrant and defend the title to the said lands against all legal claims whatever.

The fiction that it was the intention of appellants' grantors to merely except the easement from their warranty is simply inconsistent with the plain language of the deed. There is no exception from the warranty. There is an exception from the grant. Whenever an exception is a part of the granting clause of a deed, it must be read in connection with

the grant as a limitation therein. *Bodcaw Lumber Co.* v. *Goode*, 160 Ark. 48, 254 S.W. 345, 29 ALR 578. An exception is of some part of an estate not granted at all. *Eye* v. *Baumann*, 231 Ark. 278, 329 S.W. 2d 161. That which is excepted is not granted at all. *Beardslee* v. *New Berlin Light and Power Co.*, 207 N.Y. 34, 100 N.E. 434 (1912). Consequently, that part of it (Lot Numbered 12 and the North 60 feet of Lot Numbered 11 in Block Numbered 5 of Archais-Bushnell Addition to the City of Fayetteville) *in* the Frisco Railroad right of way was not granted to appellants. There are cases from other jurisdictions in which similar exceptions have been held to be an exception of the land and not just an easement. See e.g.: *Reynolds* v. *Gaertner*, 117 Mich. 532, 76 N.W. 3 (1898) - "except two and forth-sixths hundredths acres to the Chicago and Canada Southern Railroad"; *Vincent* v. *City of Kalamazoo*, 111 Mich. 230, 69 N.W. 501 (1896) - "except so much thereof as was set aside for sidewalk purposes"; *Hannah* v. *Southern Pacific Railroad Co.*, 48 Cal. App. 517, 192 P. 304 (1920) - (1) "reserving a strip of land 100 feet wide for the right of way of the Southern Pacific Railroad Co." - (2) "reserving a 100-foot strip granted by Alfred Robinson, trustee, as a right of way for a railroad by deed recorded in Book, ..." - (3) "excepting therefrom a strip of land 100 feet wide containing 1.75 acres, being the right of way of said Southern Pacific Railroad Company" - (4) "containing 20.61 acres, less 1.75 acres, right of way of said Southern Pacific Railroad Company ..."

The use of the words "grant, bargain and sell" would hardly make the granting clause in this deed an express warranty, because the deed contains a general warranty clause which is indeed, much broader than the limited warranty provided by Ark. Stat. Ann. § 50-401 (Repl. 1971). This section itself contains certain exceptions and is inapplicable where the deed contains other clauses stating the claims against which the title is warranted. *Doak* v. *Smith*, 137 Ark. 509, 208 S.W. 795.

Furthermore, the use of those words does not create a general warranty. The covenant against encumbrances is limited to those done or suffered by the grantor. *Seldon* v. *Budley E. Jones Co.*, 74 Ark. 348, 85 S.W. 778. There we said:

....In regard to the covenant against incumbrances the

rule is thus stated: "The covenant against incumbrances embraces every right to and interest in the lands conveyed, diminishing the value of the estate, but not inconsistent with a transfer of the fee. It is not a mere covenant to indemnify, though often described as such, but an engagement that the grantor's title is not incumbered, and is broken, if at all, at the instant of its creation." 2 Warvelle on Vendors, §§ 971, 975. See *Brooks* v. *Moody*, 25 Ark. 452.

The easement for the railroad right-of-way was an encumbrance. Patton on Titles 1022, § 344 (1938); Thompson, Title to Real Property 71, § 61 (1919); Maupin on Marketable Title to Real Estate 851, § 305; 3 Flick, Abstract & Title Practice (2d ed.) 259, § 1951; 92 CJS 69, Vendor & Purchaser, § 206; 25 Am. Jur. 2d 418, Easements & Licenses, § 2; 57 ALR 1376, 1426, 1436; 4 Tiffany, Real Property 135, § 1004 (1920); 7 Thompson on Real Property (Perm. Ed.) 198, § 3720. The latter author says:

3721. Particular rights and easements as encumbrances. A right of way in existence when the grantor acquired title does not constitute a breach of a covenant that the grantor has not done and has not suffered to be done any act, matter, or thing whatsoever to encumber the land.

The railroad right-of-way was an encumbrance done or suffered by a remote grantor, not appellants' grantor.

I do agree with the premise of the majority that the intention to except the fee of the right-of-way or to reserve an interest therein in the grantor must be clearly expressed. I ask "How could it have been more clearly expressed than by words in the granting clause 'except that *part of it in* the Frisco Railroad right-of-way?" (Emphasis mine.)

I am incapable of expressing my conception of the correct holding in this case any better than the learned chancellor did. He said:

As successor in title to the right-of-way grantor,

plaintiffs claim those portions of the lots formerly within the abandoned right-of-way, as being appurtenances to the lots. After abandonment of right-of-way by railroad, it conveyed its interest in the right-of-way to defendant Pearson by quit claim deed. Based on these allegations, the complaint asks removal of Pearson's quit claim deed as a cloud on plaintiff's title.

The demurrer, with other reasons not pertinent here, challenges the statement of a cause of action. In my opinion, the demurrer should be sustained. While such a demurrer admits all facts well pleaded, it does not admit conclusions of law. Further where there is a variance between the pleading and exhibits thereto, the exhibits control the pleading.

Paragraph 3 of complaint alleges that the conveyance to plaintiff was "specifically subject to a railway right-of-way in the defendant ... Railway Company." Exhibit A to complaint is plaintiff's deed, and part of the granting language in that deed is "except that part of it" (the described land) "in the Frisco Railroad right of way." Exhibit B to the complaint is the right-of-way grant to defendant railway.

Thus, the grant to plaintiff of Lot 12 and part of Lot 11 was not merely subject to the right-of-way, but had excepted from it that part of the railway right-of-way. The effect is that such part as lay in the right-of-way simply was not granted.

Ordinarily, an exception in a deed description must be described with the same definitiveness and certainty that is required when describing the property granted. But, if the language of the exception provides information which, when supplemented by competent extrinsic evidence, satisfactorily identifies the excepted parcel, it is sufficient. *Parker* v. *Cherry*, 209 Ark. 908; *Rye* v. *Baumann*, 231 Ark. 278.

Here, a plaintiff's deed description, together with the railway company right-of-way grant, furnish com-

plete description of the excepted parts of the lots in question. The exception therefore removed the excepted portion from the grant to plaintiff, and on the face of the complaint, with exhibits, plaintiff has no title to such excepted portion.

The effect of plaintiffs' authorities is simply to say that the grantor, where an exception appears to be made, is only recognizing the pro tempore or perpetual existence of a dominant estate of use, such as an easement or a common carrier right-of-way, and does not intend to except the servient fee from the whole grant. Practical reasons are advanced to support the conclusion, such as the economic unlikelihood of one deliberately excepting a narrow or irregularly shaped piece from a greater tract, and the proliferation of litigious causes likely to arise from such a matrix. Such considerations are well and good, and may lead to enunciations of a generally desirable public policy. But they do not answer particular cases, based upon particular facts, nor serve to alter more anciently grounded rules of conveyancing and titles.

It is recognized that a danger exists in becoming bound up in semantics, but: It is noted the language in cases cited are in terms of "less railroad right-of-way" or "excepting railroad right-of-way". In the instant case, the language is "except that part of it in the Frisco Railroad right-of-way". If words have not lost their meaning, the instant exception is considerably more than mere recognition of the physical existence of the right-of-way; it is a specific exception of the *land*, those parts of the platted lots that lie *in* the right-of-way.

Plaintiffs' concluding point in their brief on motion for reconsideration is without merit. It offers, as argument, the legal result sought by the complaint. The whole suit is on the theory that the right-of-way is an appurtenance to plaintiffs' grant. If there was no grant of the land *in* the right-of-way, the inclusion of "appurtenance" in the habendum clause would not supply the omission in the grant. An attempted exception in the

habendum will not stand as against an entire grant in the granting clause (*Mason* v. *Jackson,* 194 Ark. 236); no more will it supply a full grant where there is exception in the granting clause.

This case is virtually identical with *Hall* v. *Wabash R. Co.,* 133 Iowa 714, 110 N.W. 1039 (1907). The language of the court there is particularly applicable and I would apply it here. That court said:

> . . . .The plaintiff's deed to the S.W. ¼ of the N.W. ¼ of section 28 was from Athalia Carroll, who owned the land when the right of way was first located, and who deeded the same to the old Iowa Central Railroad Company. In her deed to the plaintiff, she excepted the land occupied by such right of way, in the following language, "excepting the part occupied by the right of way of the Iowa Central Railroad Company." This exception is clear and unequivocal, and no title to the land embraced in the right of way passed. She deeded all of the 40-acre tract, except the land occupied by such right of way. We do not see how an exception could be more definite, or how the intent of the grantor could be made plainer. The railroad company then had a recorded deed of the right of way. An exception in the grant of the right of way alone would amount to nothing, and, unless the exception in question withheld from the grant the strip of land so occupied, it is meaningless. It was the soil itself that was in terms excepted from the grant, and not merely the right of way.
>
> The exception before us is not repugnant to the grant, and must be held valid; and, if it be valid, the title to the land occupied as right of way remained in the grantor, with the like force and effect as if no grant had been made. *Spencer* v. *Wabash Railroad Company (Iowa),* 109 N.W. 453; *Wiley* v. *Sirdorus,* 41 Iowa, 224; 4 Kent, Com. 468; *Moulton* v. *Trafton,* 64 Me. 218; *Marshall* v. *Trumbull,* 28 Conn. 183, 73 Am. Dec. 667; *Ashcroft* v. *Eastern R. Co.,* 126 Mass. 196, 30 Am. Rep. 672; *Allen* v. *Scott,* 21 Pick. (Mass.) 25, 32 Am. Dec. 238. It was therefore error for the court to instruct that the plaintiff was entitled, under his deed from Mrs. Carroll, to

recover as to the 40 acres in question. *Spencer* v. *Wabash Railroad Co.*, supra.

This case has been cited with approval in *Studebaker* v. *Beek*, 83 Wash. 260, 145 P. 225 (1915); *Higgins Oil & Fuel Co.* v. *Victory Co.*, 230 F. 421 (1916); *Las-Daub Realty Corporation* v. *Fain*, 210 N.Y.S. 623 (1925); *Marr* v. *Wood*, 283 Ky. 428, 141 S.W. 2d 573 (1940); *Corning* v. *Lehigh Valley Railroad Co.*, 14 A.D. 2d 156, 217 N.Y.S. 2d 874 (1961). Appropriate distinctions are made when the grant excepts *a right of way* and when the conveyance is subject to a right of way. See *Moakley* v. *Blog*, 90 Cal. App. 96, 265 P. 548 (1928); *Corning* v. *Lehigh Valley Railroad Co.*, supra.

In spite of the language quoted from *McGee* v. *Swearengen*, 194 Ark. 735, 109 S.W. 2d 444, the decision, as I recall it, seems to be somewhat inconsistent with the result here, although I am not sure whether the majority is holding that appellants' grant carried the "reversionary interest" to the center of the railroad right of way, to the outer boundaries of the lots described in the deed or clear across the right of way. There, Monaghan, as trustee, owned a quarter section of land. The south boundary line of the tract was in the right of way of State Highway No. 70. A right of way for a drainage canal 45.8 feet wide across the Monaghan tract adjoined the highway right of way on the north. The quarter section was then platted as Compress Subdivision. The plat showed the highway and located a street designated as Nance Avenue immediately adjoining the drainage district right-of-way on the north. A lot conveyed by Monaghan to the appellant McGee was bounded on the south by Nance Avenue. Subsequently, Monaghan conveyed the land in the right-of-way for the drainage canal to Doyle, who obtained permission from the drainage district to erect a building on the tract so long as it did not interfere with flowage through the drainage canal. Nance Avenue was later vacated by the City of West Memphis. Monaghan had quitclaimed all interest in Nance Avenue and his residuary interest in the drainage ditch to the property owners along the north side of Nance Avenue. Swearangen was the devisee of Doyle, the deceased. Appellant McGee claimed the reversionary interest in all three rights-of-way since her southern boundary was

separated from the south boundary of the quarter-section only by these rights-of-way. Ms. Swearengen claimed that Ms. McGee had no interest in Nance Avenue and certainly none beyond the center line. This court held that Monaghan had retained the fee underlying the drainage district and highway easements and that his conveyance to Ms. McGee did not carry a "reversionary interest" beyond the center line of Nance Avenue and that his quitclaim deed to adjoining owners would not convey any interest to Ms. McGee because of the prior conveyance to Doyle.

It seems to me that the holding that Monaghan retained the fee underlying all these easements except one-half of Nance Avenue, where there was no reservation or exception anywhere in the conveyance to Ms. McGee, is not consistent with the holding here where there was.

I certainly disagree with the statement that the language here is no more explicit than that in *McGee*. In *McGee*, there was not even an attempt to express a reservation of the servient tenement. Here there was a clear, concise, and, in my opinion, effective expression of intention. The ordinary scrivener would have expressed it no differently.

I should like to point out that, except for isolated extreme applications which would not even permit extrinsic proof, the principal authorities relied upon by the majority do not involve a situation like the one before us. The widely quoted language of Mr. Justice (then Judge) Taft in *Paine* v. *Consumers' Forwarding & Storage Co.*, 71 F. 626 (6th Cir. 1895) involved deeds closing with the phrase, "Subject to all legal highways". Judge Taft said of this:

> . . . . There is not the slightest evidence that the land within the lot lines was subject to any easement of way, public or private, and unless this refers to the common way for all the lots sought to be reserved in Water street it is difficult to understand its meaning. If such is the reference, then it is clear that the grantors in the deeds supposed that they were parting with all their interest, not only in the land within the lot lines, but also in the street.

Furthermore, the author of that opinion also said:

> . . . .Most of the decisions are rested on some perculiari-
> ty of phrase in the description, and it is very difficult to
> lay down any general rules for determing when the
> grantor has used language sufficiently explicit to ex-
> clude from the operation of the deed the fee to the center
> of the abutting road.

It should be noted that in *Shell Petroleum Corp.* v. *Ward*,
100 F. 2d 778 (5th Cir., 1939), the right-of-way was for an
irrigation canal. The court construed an exception, stating
that grants are liberally, and exceptions strictly, construed
against the grantor and explained the physical situation thus:

> This principle is especially vigorous in operation,
> where, as here, a construction is contended for which
> would produce the unreasonable result of splitting into
> two pieces a tract of land, which existed as one tract,
> subject only to an easement, and which, in reason, must
> be considered to have been conveyed as such, and not to
> have been split into separate parts, with a thin wedge
> of land between.

It should be noted also that the grantors of the right-of-way
and the grantors who made the subsequent conveyance to the
grantee, who was contending that there was no exception in
his deed, were the same persons.

It seems to me that the appropriate distinction was made
in *Moakley* v. *Los Angles Pac. Ry. Co.*, 139 Cal. App. 421, 34 P.
2d 218, where the tract was conveyed "excepting therefrom
so much as has been taken for the county road known as Ver-
mont avenue, for the street known as Benefit street and for
electric car lines across said land." The grantor had previous-
ly granted a right-of-way to Los Angeles Pacific Railway
Company, a corporation. The court said:

> . . . .In cases where the clause referred merely to the
> right of way previously granted it has been generally
> held that it was not the intention to reserve the fee; but
> where the deed in terms excepts the piece of land oc-

cupied by the right of way it has been held that an exception was plainly intended and that title remains in the grantor subject to the easement.

. . . .However, when the language of the deed is equivocal the question of construction may rest upon extrinsic facts and circumstances. (Citations omitted.)

The court there determined that only an easement had been "taken." I would agree that a similarly worded exception here would have been ambiguous, but I strongly feel that the deed we have before us "excepts the piece of land occupied by the right-of-way."

I would affirm the decree.

I am authorized to state that Mr. Justice JONES and Mr. Justice HOLT join in this opinion.