The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, AR 72576-0326
Dear Representative Hickinbotham:
You have requested an Attorney General opinion concerning street ownership, easements, and franchise fees in the City of Cherokee Village.
You indicate that a particular individual (John Cooper) created a residential development. Later, a suburban improvement district was created to maintain the development. Subsequently, Cooper sold his interest in the development to Daggett Development Co. The development eventually became an incorporated city, which is now Cherokee Village.
More specifically, you have asked:
 (1) Which public entity owns the streets — the suburban improvement district, Fulton County, Sharp County, or the City of Cherokee Village?
(2) Who is responsible for road maintenance?
 (3) Is it legal for Daggett Development Co. to collect franchise fees from the cable TV company, simply because it is an assign of Cooper and now has the perpetual easements reserved in the original bills of assurances? If so, is there any way for the City of Cherokee Village to acquire these fees?
 (4) Does Daggett Development Co. still have ownership of the easements, even after the incorporation of the City of Cherokee Village?
 (5) How would the foregoing impact other utilities (such as telephone and electric) within the city limits?
RESPONSE
Question 1 — Which public entity owns the streets — the suburbanimprovement district, Fulton County, Sharp County, or the City ofCherokee Village?[1]
It is my opinion that the answer to this question will depend largely upon the provisions of the deeds to the abutting property owners, the developer's original plat of the area, and whether the deeds and plat are consistent with the developer's bill of assurance (of which you provided me a copy).
If the deeds and plat are consistent with the bill of assurance that you provided, I would conclude that the abutting property owners actually hold the ultimate ownership interest in the streets of the development — although these streets have been dedicated to the public, and although various parties may have easements for the use of the streets for various purposes. The Arkansas Supreme Court and Court of Appeals have both upheld the common law presumption that a conveyance of property that abuts a right of way that is in use extends to the center of the right of way, in the absence of a clearly stated contrary intent. See Wallner v. Johnson,21 Ark. App. 124, 730 S.W.2d 253 (1987); Abbott v. Pearson,257 Ark. 694, 520 S.W.2d 204 (1975). Accord, Freeze, Mayor v. Jones Harvel, 260 Ark. 193, 539 S.W.2d 425 (1976) (when street is dedicated to the public, the governmental entity in which the street is located holds merely a right-of-way, and does not own the street).
The Abbot court explained the policy basis for this common law rule as follows:
 The intent to convey to the middle line of the highway arises from the presumption that the adjoining owners originally furnished the land for a right-of-way in equal proportions; and from the further presumption that such owner, in selling land bounded upon the highway, intended to sell to the center line of the street, and not to retain a narrow strip which could hardly be of use or value except to the owner of the adjoining land. The public policy of discouraging separate ownership of narrow strips of land is the basis for the rule.
Abbot, supra, at 697, quoting Thompson on Real Property, 3068 (Repl., 1962).
I have not been provided with copies of any of the abutting property owners' deeds, nor have I been provided with a copy of the developer's plat. These documents may indicate an intent that the deeds to the abutting property owners not convey the property to the center of the streets. However, I note that the documents that you have provided for my review do not indicate any such intent, or any intent that the original developer retain an ownership interest in the streets. Indeed, in the bills of assurances for the development, the developer explicitly dedicated the streets to the public, reserving for himself certain easements for the installation of public utilities. He also established certain restrictions that were to run with the land. If he had intended to retain ownership of the streets, he surely would have indicated this intent in the bills of assurances, just as he indicated his intent with regard to the easements and restrictions. Unless a contrary intent is indicated in the plat and the deeds, the presumption under Arkansas law is that the conveyance from the developer to these purchasers extended to the middle of the streets.
Because I have not been provided with all of the relevant documents, I can draw no definitive conclusion regarding the ownership of the streets. However, it is my opinion that unless these documents contain an indication of a contrary intent on the part of the developer, the owners of the property abutting the streets will be deemed to own those streets. I reiterate that as indicated in Attorney General Opinion No.99-365, the public, as incarnated in the city, owns the right of way easement in the streets, and the developer's assignee owns the utility easements.
Question 2 — Who is responsible for road maintenance?
It is my opinion that the city is responsible for the maintenance of all public streets within the city limits. The city's responsibility to do so is statutorily imposed, as follows:
The city council shall:
 (1) Have the care, supervision, and control of all the public highways, bridges, streets, alleys, public squares, and commons within the city; and
 (2) Cause those public highways, bridges, streets, alleys, public squares, and commons to be kept open and in repair, and free from nuisance.
A.C.A. § 14-301-101.
The language of the above-quoted statute is clear and unambiguous. It plainly requires the city to maintain public streets within the city limits. The documents that you have provided for my review indicate that the streets in Cherokee Village were explicitly dedicated to the public by the developer in the bills of assurances. Assuming that the bill of assurance that you provided me is accurate and that no other document states a contrary intent, the streets of Cherokee Village are "public" streets within the city, the city must maintain them.
Question 3 — Is it legal for Daggett Development Co. to collect franchisefees from the cable TV company, simply because it is an assign of Cooper?If so, is there any way for the City of Cherokee Village to acquire thesefees?
It is clear from the bills of assurance that the original developer, Cooper, reserved for himself and his assigns easements for the installation of utilities. The bills of assurance specify that Cooper's reserved easement was to be "perpetual, alienable, and releaseable," and that Cooper would have the specific right to "transfer and convey" such easement. Assuming that neither the deeds nor any other documents conflict with the original developer's reservation of this utility easement, Cooper was entitled to convey his utility easement to Daggett Development Co.
It is unclear, however, whether Arkansas law supports the proposition that a private entity may collect "franchise fees" for utility service in municipalities. Arkansas law does not explicitly address this question. The Arkansas Supreme Court has explicitly held that a person who dedicates property to public use may limit that dedication by way of a reservation that allows him to continue to exercise ownership rights. SeeArk. State Highway Comm. v. O. B. Inc., 227 Ark. 739, 301 S.W.2d 5
(1957); Ft. Smith V.B. Bridge Dist. v. Scott, 111 Ark. 449 (1914). The court has not addressed a situation in which the reservation in question appears to be contrary to the statutory authority of a governmental entity. Cooper's reservation of all utility easements (i.e., the right to install utility facilities) may constitute a reservation that is contrary to the statutory authority that is granted to municipalities.
Municipalities are granted the authority to
 determine the quality and character of each kind of, and rates for, product or service to be furnished or rendered by any public utility within the city or town and all other terms and conditions, including a reasonable franchise fee, upon which the public utility may be permitted to occupy the streets, highways, or other public places within the municipality[.]
A.C.A. § 14-200-101.
It is fundamental that instruments affecting interests in property must be consistent with the law. See, e.g., Cannco Contractors, Inc. v.Livingston, 282 Ark. 438, 669 S.W.2d 457 (1984) (stating that basic rule of construction of deeds is to ascertain and give effect to the real intention of the parties "if not contrary to law." Id. at 442.). Thus, an argument could be made that the developer's reservation of a utility easement is contrary to the statutory authority of municipalities as stated in A.C.A. § 14-200-101, in that it allows the developer to usurp the authority of cities to determine the terms and conditions of the utility service being provided in the city. Because the Arkansas appellate courts have not addressed this specific issue, it is unclear whether such an argument would be successful.
I note, however, that other jurisdictions have limited the effect of reservations in dedications where such reservations would be contrary to law or public policy. For example, in Burns v. Board of Sup'rs ofStafford County, 226 Va. 506, 312 S.E.2d 731 (1984), a county sued for a declaratory and injunction against certain developers who had dedicated to the public use the streets in a subdivision they had developed, but had reserved to themselves an easement to maintain and install utility facilities under the streets. An applicable statute provided that developers could maintain facilities of this nature only with the approval of the local governing body. The Virginia Supreme Court held that the developers' reservation of the utility easement was void because it was contrary to the intent of the statute. The court stated: "[P]ublic policy, as expressed in language of the statute, requires that a local governing body have, to the greatest possible extent, dominion and control over streets free and clear of claims of developers so that the local governing body, in exercise of its police power, may promote the public welfare." Id. at 735. Accord, City of Sierra Vista v. CochiseEnterprises, Inc., 144 Ariz. 375, 697 P.2d 1125 (1985); City of Marshallv. Knowles, 125 Ill.App.3d 726, 466 N.E.2d 653, 81 Ill. Dec. 67 (1984).
It is not clear whether the Arkansas courts would take the same position as these other jurisdictions.
Question 4 — Does Daggett Development Co. still have ownership of theeasements, even after the incorporation of the City of Cherokee Village?
It is my opinion (assuming that the deeds and other relevant documents are not in conflict with the bill of assurance that you provided) that Daggett Development Co., as the assign of the original developer, does still have ownership of the utility easements that were reserved by the original developer. The incorporation of the City of Cherokee Village did not impact these easements. Although as explained in Attorney General Opinion No. 99-365, the ownership of the right-of-way easements in the streets did accrue to the city upon incorporation, the reserved utility
easements did not. Because the developer had expressly reserved the utility easements, a change in ownership of right-of-way easement could not affect the utility easements.
Question 5 — How would the foregoing impact other utilities (such astelephone and electric) within the city limits?
It is my opinion that the original developer's bill of assurances expressly reserved easements for the installation of various types of utilities, including telephone and electric facilities. Accordingly, all of the foregoing discussion holds is applicable to those utilities.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] You posed this question "for purposes of GASB Statement No. 34." The Government Accounting Standards Board is a private, nonprofit body that is responsible for establishing and improving accounting and financial reporting standards for governmental entities. The GASB Statement No. 34 sets forth various accounting and financial reporting standards that should be met by certain governmental entities, including municipalities. Although it is not entirely clear which particular aspect of GASB Statement No. 34 you are concerned about, I note that my answer to this question would be the same, regardless of the particular aspect.