LAS-DAUB REALTY CORPORATION, Appellant,. *v.* IRVING FAIN, Individually, Doing Business as THE FAIN KNITTING MILLS, and Another, Respondents.

Second Department, June 12, 1925.

Deeds — construction of deed by city of New York — fee of land within building line was acquired by city of New York for subway station — city deeded to plaintiff said land excepting therefrom so much as was devoted to subway purposes — retaining wall was constructed by city between station and defendants' store — city granted defendants right to cut opening in retaining wall under agreement for use of defendants' store as additional subway entrance — said retaining wall was not included in deed to plaintiff — plaintiff cannot restrain defendants from cutting through wall.

A deed by the city of New York of land which it had acquired in fee within the building line for a subway station, which deed purported to transfer to the plaintiff's predecessor in title all of said land " subject to said easement and right of way therein, including the covenants and restrictions expressed " in the deed, " together with the appurtenances and all the estates, right, title and interest of the city in and to said premises except said permanent and perpetual easement and right of way hereby reserved and retained," did not transfer to the plaintiff's predecessor in title a retaining wall constructed by the city between the subway station and the defendants' property, but after the deed was given the city still held the title in fee to the retaining wall.

Accordingly, the plaintiff cannot restrain the defendants from making an opening in the retaining wall which the defendants intend to make in pursuance of their rights under an agreement with the city, whereby the city granted the defendants permission to cut an opening in the retaining wall so as to permit of an additional entrance to the subway station through the defendants' store.

APPEAL by the plaintiff, Las-Daub Realty Corporation, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 3d day of June, 1924, upon the decision of the court rendered after a trial at the Kings Special Term dismissing the complaint upon the merits.

*Abraham Benedict* [*Gustavus A. Rogers, John W. Goff, Jr.,* and *Benjamin Weiss* with him on the brief], for the appellant.

*Almet Reed Latson,* for the respondents.

KAPPER, J.:

The public street in the borough of Brooklyn known as Flatbush avenue extension is intersected at and about the premises involved in this litigation by DeKalb avenue. A subway rapid transit railway is operated under Flatbush avenue extension, and at its junction with DeKalb avenue is one of its stations. The station entrance commences at the building line and extends into and

upon what was, prior to the subway construction, land in private ownership. The station entrance is somewhat imposing, fronting on Flatbush avenue extension for a distance of about twenty-four feet. For the purpose of building and operating the subway, the city of New York, pursuant to the provisions of the Rapid Transit Act (Laws of 1891, chap. 4, as amd.), " duly acquired in fee " the real property of which the subway entrance became a part. The property so acquired by the city consisted of a triangular plot with a frontage on Flatbush avenue extension of sixty-four feet one and one-half inches, the remaining two sides of the triangle being of the respective dimensions of about forty-seven and one-half feet and forty-two and one-half feet. Following the construction of the subway and station, the city, by deed dated July 19, 1921, sold and conveyed to one Sarah Zirinsky the said triangular plot, *excepting* therefrom so much of it as was devoted to the station and subway purposes. In the subway construction there was erected along the line of the subway entrance nearest to said De Kalb avenue, and at right angles with Flatbush avenue extension, a concrete retaining wall of a thickness of about twelve inches, extending above the sidewalk surface ten feet and below the surface forty feet. The wall is wholly within the said subway property, its exterior surface adjoining the leasehold premises of the defendants, who conduct therein a retail establishment with an entrance on said De Kalb avenue, and another entrance on Fulton street, which is to the northwest of the first mentioned entrance. The plaintiff has become the owner of the property conveyed by the city to Sarah Zirinsky, the deed to the plaintiff conveying the triangular plot " with the buildings and improvements thereon erected, *except* such structure and improvement as are *appurtenant* to the subway structure erected upon the premises *to which the party of the first part hereto claims no property rights.*" (Italics mine.) It appears that at the time this conveyance was made a two-story building for private commercial purposes was erected upon the lot, leaving unaffected all of the subway station with its stairways and subsurface platforms and the retaining wall referred to, with the exception that the retaining wall was used to support the second story of said building. The first story of said building, exclusive of the frontage utilized by the subway station entrance, was made into stores approximately on a level with the sidewalk.

On April 9, 1923, the city, " acting by the Transit Commission," entered into an agreement with the defendants whereby the defendants were authorized to make an opening in said retaining wall of a height of about nine feet extending from the sidewalk upwards and of a length not definitely shown, but intended as an entrance

to and from said subway station at the sidewalk level to and from the defendants' premises.

The plaintiff claims to be the owner of this retaining wall, and seeks an injunction to restrain the defendants from maintaining said opening. The judgment of the Special Term appealed from denied the relief to which the plaintiff claimed to be entitled. The agreement between the city and the defendants, to which reference has been made, recites the purpose of the defendants " to grant to the city * * * upon the terms herein set forth an easement of access, ingress and egress in and over the [defendants'] premises through the building on the premises between the station platform and the sidewalks on Fulton Street and on De Kalb Avenue or Flatbush Avenue Extension." It further recites that " in the opinion of the parties the construction of such entrance to the subway stairway landing of the Station and the use of such means of access will result in the improvement of the premises and the interest of the owner therein and be of substantial benefit to him and the value of such improvement and the benefit will fully equal the value of the rights and easements hereby granted." The defendants are described in the agreement as " the owner," and the instrument then provides:

" *Second.* The owner hereby grants, conveys and releases unto the City, * * * their and each of their successors and assigns, an easement in and to the premises of the owner or any future building or buildings erected in substitution therefor, for the purpose of maintaining and operating a means of access, ingress and egress between the station through and over the premises to De Kalb Avenue to Fulton Street on the south side of the premises and to De Kalb Avenue on the north side of the premises. * * * To have and to hold said easement with the rights and privileges incidental thereto unto the City, its successors and assigns as herein provided."

There are further provisions in the instrument providing for the work to be done at the expense of the defendants and with the right on the part of the city to revoke the continuance of the entrance " at any time at the will and pleasure of the City but only upon thirty (30) days' notice in writing from the Commission to the owner of the City's purpose to revoke the same, which notice shall state the date on which said right shall terminate." Other provisions contained in the instrument, of which there are many, need not be here recited.

Now, what did the plaintiff obtain by the city's deed to its predecessor in title? That deed, after reciting the city's acquirement " in fee " of the real property referred to and therein described,

next recites that " said real property so acquired by the City, except the permanent and perpetual easement and right-of-way therein, hereinafter described, has become unnecessary for rapid transit railroad purposes." It then grants to the party of the second part, " subject to said easement and right-of-way therein, including the covenants and restrictions hereinafter expressed " the triangular plot in question, " Together with the appurtenances and all the estates, right, title and interest of the City in and to said premises, except said permanent and perpetual easement and right-of-way hereby reserved and retained." It then provides:

" The portion of said premises which shall be subject to said permanent and perpetual easement and right-of-way is more particularly defined as follows:

" DESCRIPTION OF EASEMENT

" This easement has been divided into three parts in order to more clearly define it, as follows:

" Part One (1) Flat portion having a horizontal area of two hundred and ninety-one (291) square feet.

" Part Two (2) Sloping portion having a horizontal area of two hundred and fifty-two (252) square feet.

" Part Three (3) Flat portion having a horizontal area of two hundred and eighty-five (285) square feet."

This is followed by a more detailed description by metes and bounds of the so-called easement, which shows that there was excluded from the grant the station entrance of a frontage of twenty-four feet one and one-half inches, of a height " extending up to a horizontal plan ten feet above the elevation of the curb," and inclusive of the portion devoted to the stairway and landing to reach the subway station platforms below. As already indicated, the retaining wall involved here is wholly within the part reserved.

The city is not a party to the action. But in the view that we take of this action, it is not necessary to decide that it should have been made a party, as we shall assume in the light of the agreement made between it and the defendants, that it is satisfied that its interests are fully protected by the agreement. The litigation was disposed of at the Special Term upon the theory that the city had an easement in the wall " for railroad purposes " which was the " equivalent of a fee," by virtue of which the city " retained its right-of-way," so that, " when public convenience or necessity requires," the city could " cut through the walls in which this easement exists for the purpose of constructing other entrances to the subway station." While we recognize that the result arrived at by the learned Special Term is just and proper, we prefer to

place our decision upon the ground that what the city reserved here in respect to the retaining wall was a fee which by way of an exception it withheld from its grant to the plaintiff's predecessor, and which, therefore, never passed by that deed.

While, ordinarily, property acquired by a railroad company for railroad purposes involves the theory of such a use exclusively, and negatives the idea of an ownership of land in the railroad similar to that of a private ownership in fee, the situation here is different with regard to the land in question. It is not necessary here to recount the history of the Rapid Transit Act and its various amendments. Suffice it to say that in 1894 (Laws of 1894, chap. 752, § 9, adding to Rapid Transit Act, § 34 *et seq.;* Laws of 1894, chap. 752, §§ 12, 13, 14) the first legislation tending toward city construction of the subways was enacted. And it soon became evident that proper construction required the city to obtain many parcels of land for station and subway purposes in fee. Besides the authority vested in the city to acquire such estates, further provision was made by said statutes that as to all of such lands not required, or found to be unnecessary, " for rapid transit purposes," a sale thereof by and in behalf of the city was authorized. (See Rapid Transit Act, § 39, subd. 1, added by Laws of 1894, chap. 752, § 9, and Laws of 1909, chap. 498, § 19, as amd. by Laws of 1912, chap. 226, § 19, and Laws of 1913, chap. 524, § 2; Id. § 39, subd. 2, added by Laws of 1894, chap. 752, § 9, and Laws of 1909, chap. 498, § 19, as amd. by Laws of 1913, chap. 540, § 4, and Laws of 1915, chap. 544, § 2; Id. § 47, added by Laws of 1894, chap. 752, § 9, as amd., and as further added by Laws of 1915, chap. 604, § 2. See, also, intermediate amendments, especially Laws of 1895, chap. 519, § 15, and Laws of 1901, chap. 587, § 1, respectively amdg. § 39.) And so we find in the deed made to plaintiff's predecessor the recitals already referred to, namely, that the land in question was acquired by the city " in fee," and that the same " has become unnecessary for rapid transit railroad purposes " with the *exception* of the " permanent and perpetual easement and right-of-way " in said lands which the deed thereinafter described. It is, therefore, a proper assumption that when the city recited in the deed to plaintiff's predecessor its ownership of the land " in fee," that such was its ownership, and that plaintiff's predecessor obtained a like title to that portion of the property which was granted to her, for, unless she did, the plaintiff could not be heard here at all, as its rights are wholly dependent upon an ownership *in fee* by mesne conveyances from the city. Referring again to the deed we find the word " except " and the word " reserved " used to describe what the city " retained " out of the grant. While the law

distinguishes between a reservation and an exception, the terms are often used interchangeably and, whenever necessary, the technical meaning must yield to the manifest intent even though the technical term to the contrary is used. (See 18 C. J. 341. See, also, *City Club of Auburn* v. *McGeer,* 198 N. Y. 609; *Borst* v. *Empie,* 5 id. 33, 38; *Mount* v. *Hambley,* 33 App. Div. 103; affd., 164 N. Y. 601.) "The broad distinction between exceptions and reservations in deeds, for the purpose of determining ownership in land, retains the title in the grantor where the deed contains an exception, but passes the fee to the grantee where there is a reservation" (*Lembeck & Betz Eagle Brewing Co.* v. *Rosenstein,* 168 App. Div. 563, 565), or as stated by Chief Judge CULLEN in *Beardslee* v. *New Berlin L. & P. Co.* (207 N. Y. 34, 39), "A reservation is something taken back from what has been granted, but that which is excepted is not granted at all." It is apparent, therefore, that the distinction is important here, for if the city did not intend the part reserved to pass with the grant, but held it out therefrom, the title to it is not in the plaintiff and the latter cannot be heard to complain of the agreement made between the city and the defendants.

Nor is the expression of the words "easement and right-of-way" significant in and of itself as constituting a limitation upon the exception of the subway premises from the grant as made. For instance, in the various cases of grants by the city where there were reservations of land for public streets which, in effect, were simply reservations of rights-of-way, an *exception* was held to have been intended so that the parts reserved were decided not to have passed to the grantee but that the fee remained in the city (*Mayor, etc., of N. Y.* v. *Law,* 125 N. Y. 380; *Mayor, etc., of N. Y.* v. *N. Y. C. & H. R. R. R. Co.,* 69 Hun, 324; *Consolidated Ice Co.* v. *Mayor, etc., of N. Y.,* 53 App. Div. 260; affd., 166 N. Y. 92); and this is so even where the city, grantor, afterwards devoted the excepted part to a different purpose. (*Mayor, etc., of N. Y.* v. *N. Y. C. & H. R. R. R. Co., supra,* 326; *Consolidated Ice Co.* v. *Mayor, etc., of N. Y., supra,* 269.) Deeds excepting from the grant a right-of-way in the possession of a railroad company were held not to carry with them such railroad right-of-way upon abandonment by the railroad, but that the right-of-way reverted to the grantor. (*Hall* v. *Wabash R. R. Co.,* 133 Iowa, 714; *Reynolds* v. *Gaertner,* 117 Mich. 532.) It has also been held that a deed which excepted and reserved a strip of land of a certain width as a private right-of-way imported that the *fee* of the strip was intended to be reserved. (*Pritchard* v. *Lewis,* 125 Wis. 604.)

The question involved here despite the adoption interchangeably

of the words " except," " subject to," " reserved " and " easement " is, what was the manifest intent of the city in particularizing the " permanent and perpetual easement " which it excepted from the deed to the plaintiff's predecessor and thereby " reserved and retained? " It owned the fee of the entire plot before conveyance, and while it intended its grantee to have a fee title to what was actually granted, it nevertheless carved out and excepted from the conveyance in perpetuity so much as it required for the maintenance of its station and the operation of its subway railway, freed from any hostile claim of or limitation upon the city's user which its grantee might seek to impose. To secure the permanence of its subway property it particularized the three parts which it withheld from the grant by their " square feet " areas, and indicated in detail the " vertical limits " which, in so far as it concerned this particular retaining wall, it included to an elevation of ten feet, " up to a horizontal plane * * * above the elevation of the curb." It then evidenced its further intention regarding the utility of the station for the public interest, and to that end made its arrangements with the defendants to facilitate ingress and egress by means of the opening, thus affording two additional outlets, one into De Kalb avenue and the other into Fulton street, the latter through the defendant's store during store hours. There is nothing in the case to indicate a contrary intent, and indeed to evince such a purpose would have required a distinct affirmation on the part of the city that it would never make an opening in said retaining wall above or below the sidewalk level even though the facilities of public travel required it.

I advise that the judgment be affirmed, with costs.

Present — Kelly, P. J., Jaycox, Manning, Young and Kapper, JJ.

Judgment unanimously affirmed, with costs.