Mentiply v Foster (2022 NY Slip Op 00082)





Mentiply v Foster


2022 NY Slip Op 00082


Decided on January 6, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 6, 2022

531578 532560
[*1]Sandra A. Mentiply, as Executor of the Estate of A. Donald Mentiply, Deceased, Appellant,
v
Nancy Foster et al., Respondents.

Calendar Date:November 15, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Pritzker, JJ.

DuCharme Clark, LLP, Clifton Park (John B. DuCharme of counsel), for appellant.
Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (Mark E. Cerasano of counsel), for respondents.



Clark, J.
Appeals (1) from an order and judgment of the Supreme Court (Auffredou, J.), entered May 27, 2020 in Washington County, upon a decision of the court in favor of defendants, and (2) from an order of said court, entered November 19, 2020 in Washington County, which, among other things, denied plaintiff's motion for a preliminary injunction.
This action involves adjoining parcels of waterfront land that span the width of a small Lake George peninsula known as Crow Point, located in the Town of Putnam, Washington County. The parcels were part of an undeveloped, unitary tract of land until 1957, at which time Alexander Mentiply, one of plaintiff's predecessors in title, and Charles Thomas, one of defendants' predecessors in title, acquired them, flipping a coin to determine which of the two friends would take title to which parcel. Alexander Mentiply won the coin flip and took title to the western, or lakeside, parcel (hereinafter the Mentiply parcel), and Charles Thomas in turn acquired the eastern, or bayside, parcel (hereinafter the Thomas parcel). Alexander Mentiply was also deeded a "right in perpetuity of ingress and egress by footpath to the premises . . . conveyed" to him (hereinafter the deeded right-of-way by footpath) and "the use of the parking lot contiguous to the Crow Point right[-]of[-]
way." The Crow Point right-of-way, a footpath, later came to encompass Crow Point Way, also known as Crow Point Road, a private, dirt roadway that connected Crow Point to the public roadway but stopped some distance northeast of the subject parcels. "Except[ed] and exclud[ed]" from the conveyances to both men was "the aforesaid footpath as it [then stood] and [was then] used for purposes of ingress and egress to the lands of . . . George Bourgeois," the land immediately south of the two subject parcels at the point of the peninsula (hereinafter the footpath).
Sometime before 1967, Alexander Mentiply, Charles Thomas and other Crow Point residents improved Crow Point Way, which included extending the road so as to enable vehicular access to the Mentiply parcel and the Thomas parcel and the ensuing construction of camps thereon. Part of the extension carried onto the Thomas parcel, stopping just short of the boundary line between the two subject parcels (hereinafter the disputed portion of the Crow Point Way extension). Additionally, the Mentiply parcel remained approximately five feet lower in elevation than the Thomas parcel, inherently preventing a vehicle from being parked on the former. The Mentiplys therefore parked one or more vehicles on an abutting area of the Thomas parcel (hereinafter the disputed parking space), and they continued to do so for about 50 years.
In 2017, A. Donald Mentiply, who had acquired the property in 1990 from Alexander Mentiply, his father, undertook improvements to the northeast corner of the Mentiply parcel, where a set of stairs down to the rear entrance of the Mentiplys' camp was located. The 2017 improvements [*2]created an elevated parking space on the Mentiply parcel, which was to be accompanied by a new staircase down therefrom, and, in the process, significantly modified the existing stone retaining wall that ran along the parties' shared boundary, but which was mostly situated on the Thomas parcel. Defendants, who had by then acquired title to the Thomas parcel, were not consulted regarding the improvements and demanded that the Mentiplys remove the trespassing structures, obtaining a cease work order preventing further construction. They also took steps to prevent the Mentiplys from accessing the Thomas parcel, including the disputed portion of the Crow Point Way extension needed to access the elevated parking space by vehicle, the disputed parking space and the portion of the footpath that crosses over the Thomas parcel (hereinafter the disputed portion of the footpath). According to plaintiff, the Mentiplys had historically used the disputed portion of the footpath to access the front, lake-facing entrance to their camp in order to transport larger supplies and equipment that could not easily be brought through the camp via the rear entrance and to maintain the septic system that they shared with the Thomas parcel.
A. Donald Mentiply in turn commenced this action seeking title to the disputed parking space by adverse possession and an easement by prescription in the disputed portion of the footpath.[FN1] He then moved to temporarily enjoin defendants from continuing to block the Mentiplys' access to the Thomas parcel, and the parties ultimately agreed to the entry of a stipulation and order resolving that motion and requiring defendants to so refrain until the resolution of this action. Defendants joined issue, setting forth a number of affirmative defenses, along with counterclaims for trespass and to quiet title. They also specifically sought a declaration that their property was "unencumbered by easements excepting the footpath deeded for use by the land formerly owned by George Bourgeois" and, "in addition and alternatively, that . . . plaintiff has only an easement via a [three]-foot-wide footpath for ingress and egress on foot only located at the former location of the stairway" down to the Mentiply parcel.[FN2] Plaintiff replied, and, in pertinent part, asserted as an affirmative defense that defendants did not in fact have any property interest in the land constituting the disputed portion of the footpath and the disputed parking space located thereon (hereinafter collectively referred to as the disputed land) because that it was excepted and excluded from the conveyances to defendants' predecessors in title. Following a nonjury trial, Supreme Court found in favor of defendants, dismissing the complaint and awarding judgment in their favor on their counterclaims for trespass and a declaratory judgment, but the court did not address the aforementioned affirmative defense, set forth any specific declaration or otherwise speak to defendants' [*3]counterclaim to quiet title.
Plaintiff later filed a postjudgment order to show cause seeking a preliminary injunction to bar defendants from continuing to obstruct the disputed portion of the Crow Point Way extension and to hold them in contempt for allegedly violating the pretrial stipulation and order prohibiting same. The alleged obstruction prevented plaintiff from driving a vehicle over the disputed portion of Crow Point Way extension and, thus, from parking in the elevated parking space that the Mentiplys created, but a three-foot-wide opening remained, enabling plaintiff to walk to her property from the area where she has deeded parking rights and then descend to her parcel. In plaintiff's view, defendants' actions demonstrated an erroneous belief that Supreme Court granted them all of the declaratory relief they sought and, as such, clarification was needed. Defendants opposed and, following oral argument, Supreme Court denied plaintiff's application in full. The court, however, did clarify that the declaratory relief granted to defendants did not include a determination as to the scope or use of plaintiff's "deeded footpath," or deeded right-of-way by footpath, or the means by which plaintiff may traverse it, observing that plaintiff sought no affirmative relief in that respect. The court also found that plaintiff's argument concerning defendants' ownership of the disputed land was not raised at the time of trial, and the court therefore declined to address it. The court declared that defendants own the Thomas parcel in fee and that such parcel "is unencumbered, except for plaintiff's deeded footpath, nothing more."[FN3] Plaintiff appeals from the final order and judgment and the postjudgment order.
Initially, Supreme Court failed to address plaintiff's affirmative defense concerning defendants' ownership of the disputed land, which must be decided prior to considering whether she adversely acquired any rights over said land in this action. "Every instrument creating [or] transferring . . . an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law" (Real Property Law § 240 [3]; see Cannon v Hampton, 198 AD3d 1230, 1231 [2021]; Margetin v Jewett, 78 AD3d 1486, 1488 [2010]). The construction of a deed is generally a question of law for the courts to decide (see Lewis v Young, 92 NY2d 443, 449 [1998]; Jankoski v Lake Forest Acres Homeowners, Inc., 107 AD3d 1367, 1368 [2013]; Hush v Taylor, 84 AD3d 1532, 1533 [2011]), and, "[i]n construing [a] deed, all other deeds to which it refers, and which refer to each other[,] are required to be considered" (Riegel v Larnard, 178 App Div 355, 356 [1917]; see Loch Sheldrake Assoc. v Evans, 306 NY 297, 305 [1954]; Elm Lansing Realty Corp. v Knapp, 192 AD3d 1348, 1350 [2021]; Finster Inc. v Albin, 152 AD3d 922, 924-925 [2017]).
Defendants' 1994 and 1999 [*4]deeds [FN4] provide that the conveyances were "subject to a footpath as it now stands and is now used for purpose of ingress and egress to lands now or formerly of George Bourgeois," as well as "any and all covenants, conditions, restrictions, easements and agreements of record, if any, contained in the chain of title affecting [the] premises." Bourgeois obtained his land from Eastern Adirondack Development Associates, Inc. (hereinafter EADA) via a 1954 deed that also granted him "the right, in perpetuity, of ingress and egress by footpath to the north line of [his parcel], such path being a continuation of the existing [r]ight[-]of[-w]ay from the Crow Point Road leading to [the public roads]." The first deed in defendants' chain of title with the alleged exception or exclusion is a 1956 deed from Maurice Joachim to Harley Parker and Cecelia Parker conveying the still-unified tract of land encompassing both parties' parcels. That deed "except[ed] and exclud[ed]" from the conveyance the "footpath as it now stands and is now used for purposes of ingress and egress to the . . . Bourgeois land." As noted above, Charles Thomas acquired his parcel in 1957 when the Parkers divided the tract. That deed and a 1992 deed transferring the Thomas parcel to Charles Thomas' nephew, defendants' immediate predecessor in title, also contain that same clause.
In our view, the foregoing change in deed language creates an ambiguity in defendants' chain of title, permitting this Court to look at both the language of the interrelated deeds above and any extrinsic evidence from the trial that aids in clarifying the nature of the subject "exception" or "exclusion" (see Finster Inc. v Albin, 152 AD3d at 924; Town of Fowler v Parow, 144 AD3d 1444, 1447 [2016]; Rivera v Bruzzese, 93 AD3d 1124, 1125-1126 [2012]; Sedor v Wolicki, 206 AD2d 854, 855 [1994]), terms which courts will generally interpret to mean an interest or right in an estate that is not conveyed to the grantee (see Somerset R.R. Corp. v Owasco Riv. Ry., 69 NY2d 1023, 1026 [1987]; Corning v Lehigh Val. R. R. Co., 14 AD2d 156, 163-164 [1961]; see also City Club of Auburn v McGeer, 198 NY 609, 609-612 [1910]; Las-Daub Realty Corp. v Fain, 214 App Div 8, 13 [1925]). Initially, it is clear that the 1954 EADA-Bourgeois deed creates only a right-of-way easement across the land now constituting the subject parcels, and, "[a]s a rule, where the intention in granting an easement is to afford only a right of ingress and egress, it is the right of passage, and not any right in a physical passageway itself, that is granted to the easement holder" (Lewis v Young, 92 NY2d at 449; see Grosbard v Abbey on Willow Lane, LLC, 192 AD3d 773, 775-776 [2021]; Panday v Allen, 187 AD3d 775, 778 [2020]). Under these circumstances, accepting plaintiff's position — that the land described in terms of Bourgeois' easement was never in fact conveyed to the Parkers during a period of development on Crow Point — would "lead[] to the rather [*5]illogical result" of leaving Joachim with title to a right-of-way granted to another "but none of the surrounding property" (Carter v Heitzman, 198 AD2d 649, 650 [1993], lv denied 83 NY2d 751 [1994]; compare Somerset R.R. Corp. v Owasco Riv. Ry., 69 NY2d at 1024-1026). Notably absent from all of the relevant deeds in defendants' chain of title are any metes and bounds or definite description locating the land alleged to be excepted or excluded (see Shinnecock Hills & Peconic Bay Realty Co. v Aldrich, 132 App Div 118, 120 [1909], affd 200 NY 533 [1910]; compare Somerset R.R. Corp. v Owasco Riv. Ry., 69 NY2d at 1024).
At trial, defendants also proffered the testimony of an expert addressing the not uncommon misuse of language in deeds when referring to an easement (see generally City Club of Auburn v McGeer, 198 NY at 609-612; Matter of Luce v Hassett, 1 AD2d 917, 917 [1956]), and, based upon his experience and review of the pertinent deeds, he too concluded that the intent of the parties to the Joachim-Parker deed was to reserve an easement over the then-unified tract of land for the benefit of the Bourgeois parcel — Bourgeois having been granted such an easement, not any fee title to the disputed land, when he obtained his parcel two years prior. Plaintiff points to no evidence supporting a contrary conclusion, relying solely on her strict construction of "excepting" and "excluding." Construing the deeds in defendants' chain of title and the other interrelated deeds in the manner most favorable to defendants, who are standing in the shoes of the original grantees of the Thomas parcel, it is necessary here that the technical meaning of "excepting" and "excluding" yield to the intent of the parties to the Joachim-Parker deed (see Las-Daub Realty Corp. v Fain, 214 App Div at 13; see also Matter of Luce v Hassett, 1 AD2d at 917). As there is no basis upon which to conclude that defendants do not own the disputed land in fee, plaintiff's affirmative defense, which is set forth as a threshold argument for each issue on appeal, must fail.
Turning to whether plaintiff adversely possessed the disputed parking space, the party claiming to have acquired title to land by adverse possession must prove that his or her possession thereof was "(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required 10-year period" (LS Mar., LLC v Acme of Saranac, LLC, 174 AD3d 1104, 1106 [2019] [internal quotation marks, brackets and citation omitted]; see RPAPL former 501, 521; Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012]).[FN5] Additionally, as plaintiff's claim is not founded upon any written instrument describing the boundaries of the disputed parking space, she "may establish title by adverse possession only to that portion of the disputed premises that was cultivated, improved or protected by a substantial enclosure" (Silipigno v F.R. Smith & Sons, Inc., 71 AD3d 1255, 1257 [2010] [internal quotation [*6]marks, brackets and citation omitted]; see RPAPL former 522 [1], [2]; Church of St. Francis De Sales v McGrath, ___ AD3d ___, ___, 2021 NY Slip Op 06902, *1 [2021]; LS Mar., LLC v Acme of Saranac, LLC, 174 AD3d at 1106).
Although it is undisputed by this point that the Mentiplys exclusively, openly and notoriously parked one or more vehicles on the Thomas parcel for the entirety of the prescriptive period, from 1967 to 1977, we agree with Supreme Court that plaintiff failed to identify with adequate precision the area alleged to have been adversely possessed during the pertinent time period. Plaintiff almost exclusively relies upon post-1977 proof in support of her adverse possession claim, including depictions of the disputed parking space on survey maps from 1983 onward. Not only do those maps not speak to the prescriptive period, they suggest that the disputed parking space, a purportedly fixed and measurable trapezoid, occupied both sides of the retaining wall that existed between 1967 and 1977. No witness was able to offer evidence of a feature or demarcation that would otherwise define the disputed parking space as it existed at that time, and several witnesses described the location in which the Mentiplys parked as shifting over time.
Further, the maintenance performed by the Mentiplys — sporadic weed whacking in some unspecified grassy area in or around the disputed parking space, filling occasional depressions in the area with dirt and "fortify[ing]" the nearby stone retaining wall with plantings and additional gravel as needed — does not constitute cultivation or improvement within the meaning of RPAPL former 522, if those improvements even occurred during the prescriptive period and were not undertaken jointly with the owners of the Thomas parcel (see Van Valkenburgh v Lutz, 304 NY 95, 98 [1952]; Robbins v Schiff, 106 AD3d 1215, 1217 [2013]; Wilcox v McLean, 90 AD3d 1363, 1366 [2011]; Mayville v Webb, 267 AD2d 711, 712 [1999]; Winchell v Middleton, 226 AD2d 1009, 1009-1010 [1996]; Simpson v Chien Yuan Kao, 222 AD2d 666, 667 [1995]; Yamin v Daly, 205 AD2d 870, 871 [1994]; compare Bergmann v Spallane, 129 AD3d 1193, 1194-1196 [2015]). What is perhaps most definitive, the trial evidence established that Alexander Mentiply and Charles Thomas enjoyed a long history of, at the very least, "neighborly cooperation and accommodation" from which permissive use may be inferred (Bekkering v Christiana, 180 AD3d 1276, 1280 [2020] [internal quotation marks and citations omitted]; see McKeag v Finley, 93 AD3d 925, 927 [2012]; Susquehanna Realty Corp. v Barth, 108 AD2d 909, 909-910 [1985]), and plaintiff offered no evidence that, at any relevant time, Alexander Mentiply repudiated such permission through some overt, hostile act (see Estate of Becker v Murtagh, 19 NY3d at 81-82; Wilcox v McLean, 90 AD3d at 1365-1366; Chaner v Calarco, 77 AD3d 1217, 1218 [2010], lv denied 16 NY3d 707 [2011]; Ropitzky v Hungerford, 27 AD3d 1031, 1032 [2006]; Longshore [*7]v Hoel Pond Landing, 284 AD2d 815, 816 [2001], lv denied 97 NY2d 603 [2001]). There is therefore no basis upon which to disturb Supreme Court's decision as to plaintiff's adverse possession claim. Given the same lack of evidence of hostility, plaintiff's claim that she enjoys a prescriptive easement over the disputed portion of the footpath was also properly dismissed (see Auswin Realty Corp. v Klondike Ventures, Inc., 163 AD3d 1107, 1109 [2018]; Millington v Kenny & Dittrich Amherst, LLC, 124 AD3d 1108, 1110 [2015]; Zutt v State of New York, 50 AD3d 1133, 1133-1134 [2008]; Nellis v Countryman, 153 App Div 500, 501 [1912]; compare Rosenzweig v Howlan, 166 AD3d 1146, 1148-1149 [2018]).[FN6]
Supreme Court also properly awarded judgment in defendants' favor as to their trespass counterclaim in light of plaintiff's concessions at trial that the 2017 improvements that she contracted for encroached onto property that the Mentiplys knew to be owned by defendants without defendants' permission or any permissible justification (see City of Albany v Normanskill Cr., LLC, 165 AD3d 1437, 1439 [2018]; Schillaci v Sarris, 122 AD3d 1085, 1087 [2014]; Marone v Kally, 109 AD3d 880, 882-883 [2013], lv denied 24 NY3d 911 [2014]). Finally, plaintiff's argument concerning Supreme Court's postjudgment order is again that defendants do not in fact own the disputed land from which they are allegedly excluding plaintiff, including the disputed portion of the Crow Point Way extension needed to access the elevated parking area on the Mentiply parcel by motor vehicle. For the reasons discussed above, her argument is unavailing. With no other argument before us concerning that order, or the declaration made by Supreme Court therein, we affirm.
Egan Jr., J.P., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the order and judgment and the order are affirmed, with costs.



Footnotes

Footnote 1: A cause of action for an easement by necessity over the disputed portion of the footpath was withdrawn, and it was later clarified that the easement by prescription cause of action pertained only to the disputed portion of the footpath, not the disputed parking space.

Footnote 2: A. Donald Mentiply died thereafter, and plaintiff, his widow, was substituted in her capacity as executor of his estate.

Footnote 3: Although defendants delineated three separate counterclaims, Supreme Court's postjudgment order reveals that it believed there to be only two counterclaims — one for trespass and one for certain declaratory relief. We need not be detained by the treatment of the counterclaims, however, given that defendants do not appeal.

Footnote 4: Defendants and two other individuals obtained the Thomas parcel via a 1994 deed, and, in a 1999 deed, those individuals conveyed their interests to defendants.

Footnote 5: Because plaintiff maintains that title to the disputed land vested in 1977, the 2008 amendments to RPAPL article 5 do not apply (see L 2008, ch 269; LS Mar., LLC v Acme of Saranac, LLC, 174 AD3d at 1106 n 6).

Footnote 6: To the extent that plaintiff now asserts that her deeded right-of-way by footpath grants her an easement over the entirety of the disputed portion of the footpath, as plaintiff clearly conceded at oral argument on her postjudgment application, she did not interpose a cause of action based upon an express easement theory or request any declaration with respect to the scope of her deeded right-of-way, including under the arguably changed or improved conditions of Crow Point Way, and Supreme Court's postjudgment order makes clear that the court was not deciding such.