Miller v Carter (2023 NY Slip Op 00016)

Miller v Carter

2023 NY Slip Op 00016

Decided on January 5, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

534513
[*1]Lisa A. Miller et al., Respondents,
v
Roland Carter et al., Appellants.

Calendar Date:November 22, 2022

Before:Lynch, J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Stafford, Owens, Murnane, Kelleher, Miller, Meyer & Zedick, PLLC, Plattsburgh (Justin R. Meyer of counsel), for appellants.
Niles & Bracy, PLLC, Plattsburgh (John M. Crotty of counsel), for respondents.

Clark, J.
Appeal from an order of the Supreme Court (Timothy J. Lawliss, J.), entered November 10, 2021 in Clinton County, upon a decision of the court in favor of plaintiffs.
In 2009, defendants purchased a residential property (hereinafter the northern lot) in the Town of Beekmantown, Clinton County, on the shore of Lake Champlain. In 2010, plaintiffs purchased the abutting lakefront property to the south (hereinafter the southern lot). North Point Road (hereinafter the public road) runs north to south and crosses both properties. Although its origin is unclear, a dispute arose as to the proper location for the common boundary line; specifically, the parties disagreed about who owned a certain disputed parcel, which parcel was comprised of defendants' driveway and bushes located west of the public road (hereinafter the inland portion), the abutting section of the public road and a lakefront portion east of the public road (hereinafter the shore portion). In 2014, defendants built a retaining wall on the shore portion, which plaintiffs claim went past the boundary line established by their deed. In January 2020, plaintiffs commenced the instant action alleging a cause of action pursuant to RPAPL article 15 to quiet title on the disputed parcel and two causes of action for trespass, one seeking injunctive relief directing defendants to remove the section of the retaining wall encroaching past the boundary line and another seeking monetary damages. Through an answer and counterclaim, defendants also brought a claim under RPAPL article 15 to quiet title, alleging ownership of the disputed parcel through their deed or, alternatively, through adverse possession due to their actions and those of their predecessors in interest.
The parties proceeded to a bench trial in June 2021 and, after plaintiffs rested their case, defendants moved for a directed verdict, alleging that plaintiffs failed to establish a prima facie case. Supreme Court reserved on the motion. Following the conclusion of the trial, the court denied defendants' motion. Supreme Court found that plaintiffs had established their deed line as the proper boundary line but that defendants, through their predecessor in interest Addie Shields, had adversely possessed the inland portion. However, the court found that defendants failed to establish adverse possession of the public road and of the shore portion. As a result, the court granted defendants title to the inland portion through adverse possession and quieted title to plaintiffs as to the rest of the disputed parcel. Further, the court granted plaintiffs' claims for trespass, awarding plaintiffs nominal damages in the sum of $1 as well as a permanent injunction against defendants — including directing the removal of the encroaching section of the retaining wall. Defendants appeal.[FN1]
"We begin by noting that a directed verdict is appropriate when, upon the evidence presented, there is no rational process by which the fact trier could base a finding [*2]in favor of the nonmoving party" (Gold v Di Cerbo, 41 AD3d 1051, 1052 [3d Dept 2007] [internal quotation marks and citation omitted], lv denied 9 NY3d 811 [2007]; see Majid v Cheon-Lee, 147 AD3d 66, 68-69 [3d Dept 2016]). Because defendants' argument in support of their motion for directed verdict was limited to plaintiffs' cause of action to quiet title, only that challenge has been preserved for appellate review (see Kennedy v Nimons, 178 AD3d 1302, 1303 [3d Dept 2019]; Shelters v City of Dunkirk Hous. Auth., 126 AD3d 1329, 1330 [4th Dept 2015]). "In an action to determine title pursuant to RPAPL article 15, [a] plaintiff has an affirmative duty to show that title lies in him or her, which is not satisfied merely by pointing to weaknesses in [a] defendant's title" (Herbold v Labarre, 176 AD3d 1428, 1429 [3d Dept 2019] [internal quotation marks, brackets and citations omitted]; see Mazzoni v Village of Seneca Falls, 68 AD3d 1805, 1806 [3d Dept 2009]). Such plaintiff must prove the location and boundaries of the property with common certainty (see RPAPL 1515 [2]; Herbold v Labarre, 176 AD3d at 1429; Champlain Gas & Oil, LLC v People, 148 AD3d 1260, 1263 [3d Dept 2017]).
As part of their case, plaintiffs proffered the testimony of James Abdallah, a civil engineer and vice-president of Architectural and Engineering Design Associates (hereinafter AEDA). Although Abdallah's testimony was sufficient to admit a survey map of the southern lot created by AEDA in 2014 (hereinafter the AEDA survey) as a business record, Abdallah was clear that he was unqualified to prepare or analyze a survey map. Prior to plaintiffs resting, defendants submitted into evidence a survey map of the southern lot created by Robert M. Sutherland, PC in 1989 (hereinafter the Sutherland survey). Because neither the AEDA survey nor the Sutherland survey had been filed with the appropriate clerk for over 10 years (see CPLR 4522), Supreme Court should not have considered the contents of the survey maps without an expert opinion [FN2] (see Torre v Town of Tioga, 190 AD3d 1202, 1204 [3d Dept 2021]; Champlain Gas & Oil, LLC v People, 148 AD3d at 1262-1263; Bergstrom v McChesney, 92 AD3d 1125, 1126 [3d Dept 2012]; Kahil v Townsend, 5 AD2d 940, 940 [3d Dept 1958]).[FN3]
Further, although each of the three plaintiffs testified as to their personal understanding of the common boundary line, their testimony, alone, is insufficient to establish such (see Lavine v Town of Lake Luzerne, 296 AD2d 793, 794 [3d Dept 2002], lv denied 99 NY2d 501 [2002]). Upon this evidence, even when viewed in the light most favorable to plaintiffs, Supreme Court should have granted defendants' motion for a directed verdict and dismissed plaintiffs' cause of action to quiet title.
Regardless, defendants, through their RPAPL article 15 counterclaim, established the common boundary line. Defendants' land surveyor expert, Dean Lashway, prepared both a survey map of the northern lot in 2019 as well as the Sutherland survey [*3]in 1989, both of which he explained were incomplete. Lashway averred that, in the week leading up to the trial, he reviewed various deeds, including plaintiffs' and defendants' deeds, and that the boundary descriptions provided therein led him to believe that the boundary lines depicted in the four surveys in evidence were inaccurate.[FN4] However, during cross-examination, Lashway admitted that the metes and bounds descriptions provided in the deeds matched the physical landmarks he observed during his field surveys and were consistent with the boundary lines set out by the AEDA survey. Notably, Supreme Court found Lashway's theory regarding the errors in the maps unpersuasive, and, after reviewing the record, we defer to the weight given by the court to Lashway's expert opinion (see Kingsley Arms Inc. v Kirchhoff-Consigli Constr. Mgt., LLC, 173 AD3d 1506, 1509 [3d Dept 2019]; Stratton v Keefe, 191 AD2d 871, 873 [3d Dept 1993]). Considering the various surveys, deeds and the expert testimony of Lashway — including descriptions of the physical landmarks — Supreme Court found that the AEDA map accurately portrayed the common boundary line, and we agree (see Mentiply v Foster, 201 AD3d 1051, 1055 [3d Dept 2022]; Brown v Ames, 290 AD2d 693, 694 [3d Dept 2002]; Levy v Braley, 176 AD2d 1030, 1033 [3d Dept 1991]).
Using that boundary line as a starting point, we turn to defendants' claim that they established adverse possession as to the entire disputed parcel, not just the inland portion. "When reviewing a nonjury verdict, we independently review the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant the judgment warranted by the record while according due deference to the trial court's factual findings and credibility determinations" (Ross v GEICO Indem. Co., 172 AD3d 1834, 1835 [3d Dept 2019] [internal quotation marks and citations omitted]; see McCarthy Concrete, Inc. v Banton Constr. Co., 203 AD3d 1496, 1498-1499 [3d Dept 2022], lv denied 38 NY3d 913 [2022]). A party seeking to gain title through adverse possession "must establish by clear and convincing evidence that their occupation of the property was (1) hostile and under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period (at least 10 years)" (Quinlan v Doe, 107 AD3d 1373, 1374 [3d Dept 2013] [internal quotation marks, ellipsis and citation omitted], lv denied 22 NY3d 854 [2013]; see RPAPL former 521; CJA Realty Holdings, LP v 14 Phila St. LLC, 206 AD3d 1520, 1521 [3d Dept 2022]). Further, because defendants' claim is not premised upon a written instrument which encompasses the disputed parcel, defendants could "establish title by adverse possession only to that portion of the disputed premises that was cultivated, improved or protected by a substantial enclosure" (Mentiply v Foster, 201 AD3d at 1057 [internal quotation marks and citations omitted]; see RPAPL former 521).
Contrary to defendants' contention, we find that they failed to prove adverse possession of the entire parcel. Through the testimony of a neighbor whose property abutted the northern lot to the west for nearly 50 years, it was established that defendants' driveway was built in its current location around 1989. Although plaintiffs were unable to recall when the driveway was built, they admitted that it had been there for a long time and that it was only used by Shields and then defendants, and they concede on appeal that defendants adversely possessed the inland portion.
By contrast, the proof regarding the shore portion was insufficient for defendants to meet their burden. To that end, defendant Roland Carter believed that a waterline that draws water from the lake into defendants' home goes through the shore portion; however, he also admitted that the waterline was underground long before he purchased the property, and he was unsure of its exact location (see City of Kingston v Knaust, 287 AD2d 57, 61 [3d Dept 2001]). The evidence regarding a footpath used by Shields to access the lake was also insufficient. While plaintiff Hilarie Dickson (who grew up in the area) admitted that, as a child, she had seen Shields use a footpath, she averred that it was located within the northern lot. The neighbor, who could not place the location of the footpath, asserted that Shields primarily accessed the lake through the neighbor's property. Because defendants failed to establish the frequency or duration of Shields' use of the footpath, it cannot be said that such use was continuous (see Salerno v C.E. Kiff, Inc., 119 AD3d 1104, 1107 [3d Dept 2014]; Robbins v Schiff, 106 AD3d 1215, 1217 [3d Dept 2013]; Lobdell v Smith, 261 AD2d 675, 676 [3d Dept 1999]). Similarly, as the retaining wall was only constructed in 2014, it has not yet met the 10-year statutory period and, thus, cannot satisfy a claim for adverse possession (see Robbins v Schiff, 106 AD3d at 1217; McMahon v Thornton, 69 AD3d 1157, 1160 [3d Dept 2010]).
Supreme Court also correctly found that defendants failed to establish adverse possession over the portion of the disputed parcel covered by the public road, as such use was permissive (see Estate of Becker v Murtagh, 19 NY3d 75, 83 [2012]). Defendants only proved adverse possession through Shields' improvement of the inland portion — the driveway — and Supreme Court properly granted them ownership of "the premises so actually occupied, and no others" (RPAPL former 521; see Boeheim v Vanarnum, 207 AD2d 582, 583 [3d Dept 1994]). Although we find that Supreme Court should have granted a directed verdict as to plaintiffs' RPAPL article 15 claim, such dismissal does not change the outcome in this case. Defendants' RPAPL article 15 claim required Supreme Court to determine and declare the validity or invalidity of "any claim to any estate or interest established by any party to the action" (RPAPL 1521 [1]; see Levenson v Estate of Nick Laviero, 136 AD3d [*4]1248, 1249 [3d Dept 2016]; Glenn Acres Tree Farm, Inc. v Town of Hartwick Historical Socy., Inc., 84 AD3d 1529, 1530 [3d Dept 2011]). Considering the established common boundary line and defendants' failure to establish title to the remainder of the disputed parcel through adverse possession, Supreme Court properly quieted title of the remaining portion to plaintiffs (see Wilcox v McLean, 90 AD3d 1363, 1367 [3d Dept 2011]).
Defendants' sole challenge to the trespass claim — that Supreme Court erred by failing to grant defendants a directed verdict — is unpreserved, and we find no basis on which to disturb Supreme Court's grant of nominal damages or of injunctive relief requiring defendants to remove the encroaching portion of the retaining wall. Defendants' remaining contentions, to the extent not expressly addressed, have been reviewed and found to lack merit.
Lynch, J.P., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs' first cause of action to quiet title; such cause of action dismissed; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiffs did not appeal, and they do not challenge Supreme Court's finding that defendants gained title of the inland portion through adverse possession.

Footnote 2: Plaintiffs attempted to have Jeffrey Burns, a surveyor, testify to his expert opinions concerning the AEDA survey. However, Supreme Court granted defendants' motion to preclude Burns from testifying as an expert due to plaintiffs' failure to provide a timely expert disclosure.

Footnote 3:Plaintiffs also failed to submit the deed to the southern lot into evidence.

Footnote 4: R.H. Ladue prepared a survey map of the northern lot in 1973; however, as Supreme Court noted, such survey was faded and illegible.