Matter of Feldman (Feldman) (2023 NY Slip Op 51466(U))

[*1]

Matter of Feldman (Feldman)

2023 NY Slip Op 51466(U)

Decided on November 20, 2023

Surrogate's Court, Erie County

Mosey, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 20, 2023
Surrogate's Court, Erie County

In the Matter of the Accounting by Jaimie Feldman, 
 as the Voluntary Administrator of the Estate of Ira R Feldman, Deceased.

File No. 2020-3391/B

Law Offices of Ciacchia Fleming, LLP
Appearing for Petitioner Jaimie Feldman
Daniel J. Chiaccia, Esq., of Counsel
Webster & Dubs, P.C.
Appearing for Objectant Meridia Community Federal Credit Union

Acea M. Mosey, S.

Decedent died at age 71 on August 8, 2020. He was divorced, and was survived by four children. His Will, dated July 21, 2020, left everything to his daughter, Jaimie Feldman [hereafter, Jaimie], who was also nominated as executor of his estate.
Jaimie became voluntary administrator of decedent's estate on October 2, 2020, her petition listing approximately $20,000 in personal property assets. By petition verified April 2, 2022, the Meridia Community Federal Credit Union [hereafter, the Credit Union], which had filed four separate claims against the estate for monies allegedly owed to it by decedent, sought to compel an accounting from Jaimie. That accounting, together with a petition for judicial settlement, was filed on October 7, 2022.
The Credit Union then filed objections to the accounting, contending (1) that Jaimie had failed to list real property located at 2101 Lakeview Road, Hamburg, New York, as an estate asset, and (2) that "said [real estate] was transferred out of the Estate without authority granted to the Voluntary Administrator by this Court." The Credit Union requested that this Court deny approval of Jaimie's accounting. Jaimie filed a reply to the objections, contending that there is no real estate "subject to estate distribution", asserting that the realty at issue "was held [by decedent as] a life estate" and that title was vested in Jamie "by operation of law".
This Court set a schedule for submission of papers on the disputed real estate issue. Those papers were thereafter duly filed; and, although not formally so stated, the issue has been treated by the parties, and now by me, as one for accelerated judgment.
I now find and decide as follows.
(I)
As noted, decedent's Will was executed on July 21, 2020, and left his entire estate to Jaimie. With respect to the real property owned by decedent  the Lakeview Road property  decedent had executed a deed nearly a month earlier on June 30, 2020, with himself as grantor and himself "as life tenant" and "Jaimie Feldman, remainder person" as the grantees. A copy of the Deed is attached hereto as Appendix A and made a part hereof.
The Credit Union contends that decedent's estate, under the deed language considered as a whole, is a one-half owner of the real property in question. So viewed, the Credit Union continues, 50% of the value of that real property is available to satisfy any outstanding indebtedness still owed to it by decedent.
Jaimie, on the other hand, urges that a proper construction of the deed language vested the entirety of the real property at issue to her, reserving to decedent only a life estate. Under her interpretation, there is no part of that real property from which the Credit Union may seek repayment of decedent's indebtedness. 

(II)
Over 150 years ago, our Court of Appeals made clear — as the parties here recognize — that "[t]he conclusion as to the intent of the parties to an instrument in writing, to be collected from the whole instrument, is rather one of law than of fact, a duty for the court and not for the jury" (Morris v. Ward, 36 NY 587, 595 [1867]; see also Mentiply v. Foster, 201 AD3d 1051, 1055 [2022]). Furthermore, in its analysis, a Court may consider "extrinsic evidence . . . only if there are ambiguities" (Spencer v. Connolly, 25 AD3d 832, 834 [2006]).
The salient part of the June 30, 2020 deed is as follows:
"SEE SCHEDULE A
IRA FELDMAN, hereby retains a life interest in the above described property and retains the right to reside in and make improvements therein for the rest of their natural lives. In consideration of such life estate, JAIMIE FELDMAN agrees to be responsible for any taxes, water and insurance charged against the said property.
In the event that JAIMIE FELDMAN for any reason whatsoever, voluntarily or involuntarily, fails to reside upon the premises for (12) consecutive months, the life interest herein retained is terminated and the grantees shall be deemed to be the title holder therein unencumbered by said life estate in equal parts."
It is undisputed that the deed is not a model of draftsmanship. For example, in an affidavit, it has been acknowledged by the attorney who drew up the deed that
"there is a typographical error in the body of the deed relating to the life estate language in the two paragraphs following 'SEE SCHEDULE "A"' where Jaimie Feldman's name is noted. The name Ira Feldman should have been listed wherever Jaimie Feldman's name appears in those two paragraphs."
The draftsperson also states that the deed was "not a tenants in common interest conveyed to Ira Feldman and his daughter Jaime Feldman." He fails, however, to explain why the Grantee clause states the conveyance to decedent and Jaimie is "as Tenant in Common". This may again have been a drafting error, but I cannot tell that from the deed itself.
Given the obvious typographical error naming Jaimie Feldman rather than Ira Feldman in [*2]the deed's second paragraph following "SEE SCHEDULE A", and the peculiar and seemingly contradictory phraseology used in the "Grantee" provision, I am hard-pressed to discern a clear intent from the four corners of the deed itself. Although the draftsperson's affidavit says that "it was [decedent's] intention to ensure that his daughter received the property upon his passing", the "tenant in common" language would not clearly ensure that result.
The Credit Union asserts that the deed "was ill-drafted", and, without putting too fine a point on it, decedent's intent — whatever that may have been — may (or may not) have been carried out by the draftsperson's choice of language, terminology and phraseology in the deed that was prepared for decedent's signature. There are too many internal inconsistencies in the deed itself, which are magnified by the draftsperson's affidavit, for me to resolve the issue(s) before me on the papers alone, and a hearing will be required.
The Credit Union also urges that, because the deed was not recorded until nine days after decedent's death, decedent's "interest in the property fell to the Estate." I do not agree. As the Court in Fox v. Sizeland, 170 Misc 390, 399 [1938], pointed out:
"Section 291 of the Real Property Law (Recording Act [Real Prop. Law, art. 9]), after providing for the recording of conveyances of real property, reads: 'Every such conveyance not so recorded is void as against any subsequent purchaser in good faith and for a valuable consideration, from the same vendor * * * of the same real property, or any portion thereof, whose conveyance is first duly recorded.'
The basic purpose which led to the enactment of the Recording Acts was to prevent persons owning lands from selling them more than once (Jackson ex dem. Merrick v. Post, 15 Wend. 588)."
Furthermore, our Court of Appeals has held that "a deed may be good to pass the title of those who have executed it, though it may not be so acknowledged and certified as to be entitled to record. The recording acts are not so large in scope, as that a deed not recorded, or not entitled to record, is void and ineffectual. The benefit of the recording of a deed is, that it thus becomes a defense against a subsequent purchaser bona fide. . . . When a deed is subscribed and sealed by the grantor named in it, or his lawful agent, though it is not acknowledged, if the execution and delivery of it is attested by at least one witness, it is effectual to pass the title of the grantor to the grantee, and to protect that title in the grantee against every one but a subsequent bona fide purchaser" (Fryer v. Rockefeller, 63 NY 268, 274 [1875]). See also, Tomhannock, LLC v. Roustabout Resources, LLC, 149 AD3d 1219, 1221 ["title to property vests upon the execution and delivery of the deed . . . and the fact that the deed may not be recorded until a later date — or at all — does not affect the validity of the conveyance"] [2017], affd 33 NY3d 1080 [2019].
Thus, I find no merit to the Credit Union's claim that the failure to record the deed until shortly after decedent's death rendered it ineffectual.
Accordingly, I hereby set the issues concerning the deed down for an evidentiary hearing before the Chief Attorney of this court, on a hear and report basis. I also hereby schedule a telephone conference with counsel for the parties and the Chief Attorney for Thursday, December 7, 2023, at 9:00 am, to schedule that hearing date.
DATED: BUFFALO, NEW YORK
November 20, 2023
_____________________________
HON. ACEA M. MOSEY
Surrogate Judge